No. 22-1949

# In The United States Court Of Appeals For The Eighth Circuit

NICOLAS TASHMAN,

*Plaintiff-Appellant,*

v.

ADVANCE AUTO PARTS, INC.,

*Defendant-Appellee.*

On Appeal from the United States District Court for the Eastern District of Missouri, Case No. 20-00943
The Honorable Henry Edward Autrey, Judge

**BRIEF OF PLAINTIFF-APPELLANT NICOLAS TASHMAN**

Mark S. Schuver, #34713
Natalie T. Lorenz, #65566
Montana L. Sinn, #74225
MATHIS, MARIFIAN & RICHTER, LTD.
23 Public Square, Suite 300
P.O. Box 307
Belleville, IL 62220
(618) 234-9800

*Attorneys for Plaintiff-Appellant Nicolas Tashman*

## SUMMARY OF THE CASE

Plaintiff-Appellant, Nicolas Tashman ("Tashman") is of Middle Eastern descent. App. 326-327, 329; R. Doc. 34-1, at 2-3, 5. On September 19, 2019, he entered Defendant-Appellee's Advance Auto Parts ("AAP") store in Florissant, Missouri, when, without provocation, AAP's salesperson, Kevin Doe ("Doe"), began shouting racist and threatening statements at him, including *"Go back to your damn country, go to your camel country,"* "*I'm going to beat your ass.*" App. 342-343; R. Doc. 34-1, at 18-19. Doe was not disciplined in any way until two months later, and only after Plaintiff's counsel threatened litigation. App. 448-449; R. Doc. 34-4, at 45-46.

Tashman filed this action against AAP for unlawful discrimination under 42 U.S.C. § 1981, as well as assault and intentional infliction of emotional distress.[1] App. 007-017, R. Doc. 1. At the close of discovery, AAP filed a motion for summary judgment on all counts. App. 025-030; R. Doc. 29. The district court granted same, erroneously reasoning that AAP was not liable because it did not know of Doe's racially hostile propensities and could not have anticipated Doe's actions. App. 771-790; R. Doc. 49. This Court must reverse and remand for the reasons stated herein. Tashman requests 20 minutes per side for oral argument.

---

[1] While Tashman also filed state law claims for negligent hiring and retention (Count IV) and negligent supervision (Count V), he has abandoned those claims on appeal.

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ... iii
TABLE OF AUTHORITIES ... iv
JURISDICTIONAL STATEMENT ... 1
STATEMENT OF ISSUES ... 2
STATEMENT OF THE CASE ... 3
SUMMARY OF THE ARGUMENT ... 10
STANDARD OF REVIEW ... 13
ARGUMENT ... 14

I. The District Court Erred in Holding that Evidence of Defendant's Knowledge of Its Employee's Prior Discriminatory Conduct or Propensities is Required to Demonstrate Discriminatory Intent Under 42 U.S.C. § 1981 ... 14

II. Plaintiff Raised a Genuine Issue of Material Fact that Doe Acted Within the Scope of Employment and As a Means of Doing Work for Defendant when Doe was Authorized to Interact with Plaintiff During the Battery Testing Process and Did So During Work Hours on Defendant's Premises ... 20
   A. The District Court Failed to Apply the Appropriate Legal Standards ... 21
   B. Doe Acted Within the Scope of His Employment ... 25
   C. Public Policy Dictates the Imposition of Respondeat Superior Liability ... 30

III. Plaintiff Raised a Genuine Issue of Material Fact that Defendant Ratified Doe's Conduct When Defendant Failed to Timely Address or Sanction it ... 33

CONCLUSION ... 38
CERTIFICATE OF COMPLIANCE ... 40
CERTIFICATE OF SERVICE ... 41



Appellate Case: 22-1949 Page: 3 Date Filed: 07/15/2022 Entry ID: 5177859

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Arguello v. Conoco, Inc.*,
207 F. 3d 803 (5th Cir. 2000) .....2, 17, 19

*Avenoso v. Reliance Standard Life Ins.*,
19 F.4th 1020 (8th Cir. 2021) .....13

*Bass v. Kansas City Journal Post Co.*,
148 S.W.2d 548 (Mo. 1941) .....25, 26

*BE & K Const. Co. v. N.L.R.B.*,
23 F.3d 1459 (8th Cir. 1994) .....2, 34

*Benham v. McCoy*,
213 S.W.2d 914 (Mo. 1948) .....30

*Bova v. St. Louis Public Service Company*,
316 S.W.2d 140 (Mo. Ct. App. 1958) .....26, 30

*Burger Chef Sys., Inc. v. Govro*,
407 F.2d 921, 925 (8th Cir. 1969) .....21

*Burlington Indus., Inc. v. Ellerth*,
524 U.S. 742 (1998) .....23

*Carter v. Willert Home Prod., Inc.*,
714 S.W.2d 506, 512 (Mo. 1986) .....2, 21, 22, 23

*Compton v. Vaughan*,
222 S.W.2d 81 (Mo. 1949) .....2, 12, 35

*Daniels v. Dillard's, Inc.*,
373 F.3d 885 (8th Cir. 2004) .....17

*Daugherty v. Allee's Sports Bar & Grill*,
260 S.W.3d 869 (Mo. App. 2008) .....2, 11, 28

*Doe by Doe v. B.P.S. Guard Servs., Inc.*,
945 F.2d 1422 (8th Cir. 1991) ........................................................2, 11, 26, 27, 30

*Doyle v. Scott's Cleaning Co*.,
31 S.W.2d 242 (Mo. Ct. App. 1930).....................................................................24

*Eddy v. Waffle House, Inc*.,
335 F. Supp. 2d 693 (D.S.C. 2004).......................................................................17

*Egnatic v. Nguyen,*
113 S.W.3d 659 (Mo. Ct. App. 2003)..........................................................2, 12, 35

*Foster v. Campbell,*
196 S.W.2d 147 (Mo. 1946) ..................................................................................27

*Gardner v. Simmons,*
370 S.W.2d 359 (Mo. 1963) ..................................................................................30

*Green v. Dillard's, Inc*.,
483 F.3d 533 (8th Cir. 2007) ................................................ 2, 8, 10, 15, 16, 17, 18

*Gregory v. Dillard's, Inc*.,
565 F.3d 464 (8th Cir. 2009) .................................................................................15

*Haehl v. Wabash Railway Co.,*
24 S.W. 737 (Mo. 1893) ........................................................................................25

*Higgenbotham v. Pit Stop Bar & Grill, LLC*,
548 S.W.3d 323 (Mo. Ct. App. 2018)....................................................................25

*Hyken v. Travelers Ins. Co.,*
678 S.W.2d 454 (Mo. Ct. App. 1984)....................................................................33

*Linam v. Murphy,*
232 S.W.2d 937 (Mo. 1950) ..................................................................................27

*Long's Marine, Inc. v. Boyland,*
899 S.W.2d 945 (Mo. Ct. App. 1995)....................................................................35

*Maniaci v. Interurban Express Co.*,
182 S.W. 981 (Mo. 1916) ........................................................................2, 31, 32

*McDonald v. Santa Fe Trail Transp. Co.*,
427 U.S. 273 (1976)..............................................................................................14

*McKinnon v. YUM! Brands, Inc.*,
No. 1:15CV00286, 2017 WL 3659166 (D. Idaho Aug. 14, 2017)..........................18

*Missouri Valley Coll.*,
860 S.W.2d 303 (Mo. 1993) ..................................................................................21

*Mosby v. Int'l Paper Co.*,
No. 5:07CV00314-WRW, 2008 WL 2669148 (E.D. Ark. July 1, 2008)................18

*Murphy v. Jackson Nat'l Life Ins. Co.*,
83 S.W.3d 663 (Mo.App. 2002) ............................................................................33

*Nazeri v. Missouri Valley Coll.*,
860 S.W.2d 303 (Mo. 1993) ..................................................................................21

*Newman v. Schiff*,
778 F.2d 460 (8th Cir. 1985) ................................................................................. 33

*Noah v. Ziehl*,
759 S.W.2d 905 (Mo. Ct. App. 1988)...................................................25, 26, 30

*Perry v. Command Performance*,
913 F.2d 99 (3d Cir. 1990).....................................................................................15

*P.S. v. Psychiatric Coverage, Ltd.*,
887 S.W.2d 622 (Mo.App. 1994) ..........................................................................28

*Ricci v. DeStefano*,
557 U.S. 557 (2009)..............................................................................................13

*Rider v. Julian*,
282 S.W.2d 484 (Mo. 1955) ..................................................................................34



Appellate Case: 22-1949 Page: 6 Date Filed: 07/15/2022 Entry ID: 5177859

*Rivers v. Roadway Express, Inc.*,
511 U.S. 298 (1994)....................14

*Saint Francis College v. Al-Khazraji*,
481 U.S. 604 (1987)....................14

*Sayed-Aly v. Tommy Gun, Inc.*,
170 F.Supp.3d 771 (E.D. Pa. 2016)....................18

*Scott v. Harris,*
550 U.S. 372 (2007)....................13

*Sherman v. Kasotakis,*
314 F. Supp. 2d 843 (N.D. Iowa 2004)....................18, 34

*Siguenza-Chavez v. Double Check Company, Inc.,*
No. 4:19-CV-00769-BCW, 2021 WL 5103922 (W.D. Mo., July 13, 2013)....................34

*Solomon v. Waffle House, Inc.*,
365 F. Supp. 2d 1312 (N.D. Ga. 2004)....................17

*Sooter v. Magic Lantern, Inc.,*
771 S.W.2d 359 (Mo.App. 1989) ....................35

*Springfield Land and Develop. Co. v. Bass*,
48 S.W.3d 620 (Mo. Ct. App. 2001).................... 33

*Stokes v. Four-States Broadcasters*,
300 S.W.2d 426 (Mo. 1957) ....................25

*Weisz v. Great American Title Q 1-10301, LLC,*
603 S.W.3d 336 (Mo.App. 2020) ....................34, 35

*Wellman v. Pacer Oil Co.,*
504 S.W.2d 55 (Mo. 1973) ....................25

*Williams v. Ramada Inn*,
No. CIV.A. 3:2006-217, 2007 WL 2253564 (W.D. Pa. Aug. 3, 2007)....................18

**Statutes**

28 U.S.C. § 1291 ........................................ 1

42 U.S.C. § 1981 ........................................ 2, 14

**Other Authorities**

Cooley on Torts (3d Ed.) § 626 ........................................ 31

Restatement (Second) of Agency § 82 ........................................ 34

Restatement (Second) of Agency § 83 ........................................ 34

Restatement (Second) of Agency § 94 ........................................ 34

Restatement (Second) of Agency § 213 ........................................ 16

Restatement (Second) of Agency § 217C ........................................ 34

Restatement (Second) of Agency § 219 ........................................ 18, 19

Restatement (Second) of Agency § 229 ........................................ 22

Restatement (Second) of Agency § 230 ........................................ 23

Restatement (Second) of Agency § 235 ........................................ 26, 27, 30

Restatement (Second) of Agency § 236 ........................................ 26

Restatement (Second) of Agency § 245 ........................................ 26

Story on Agency § 453 ........................................ 31

## JURISDICTIONAL STATEMENT

Tashman filed his Complaint against AAP in the United States District Court for the Eastern District of Missouri under 42 U.S.C. § 1981 seeking relief from unlawful racial discrimination in contracting based on his Arab/Middle Eastern descent. App. 007; R. Doc. 1, at 1. In addition, Tashman sought relief under Missouri state law claims for assault and intentional infliction of emotional distress. App. 007; R. Doc. 1, at 1. The District Court had original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. The District Court granted AAP's, Motion for Summary Judgment as to all counts of Tashman's Complaint for the reasons set forth in the court's Opinion, Memorandum and Order entered on April 8, 2022. App. 771-790; R. Doc. 49; App. 791; R. Doc. 50. The Judgment entered on April 8, 2022, disposed of all claims and Tashman timely filed a timely notice of appeal on May 5, 2022. App. 791; R. Doc. 50; App. 792; R. Doc. 51. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.



Appellate Case: 22-1949 Page: 9 Date Filed: 07/15/2022 Entry ID: 5177859

## STATEMENT OF ISSUES

1. Whether the District Court erred in holding that evidence of Defendant's knowledge of its employee's prior discriminatory conduct or propensities is *required* to demonstrate discriminatory intent under 42 U.S.C. § 1981.

*Green v. Dillard's, Inc.*, 483 F.3d 533 (8th Cir. 2007)

*Arguello v. Conoco, Inc.*, 207 F. 3d 803 (5th Cir. 2000)

42 U.S.C. § 1981

2. Whether Plaintiff raised a genuine issue of material fact that Doe's actions were within the scope of his employment and performed as a means of doing work for Defendant when Doe was authorized to interact with Plaintiff during the battery testing process and did so during work hours on Defendant's premises.

*Carter v. Willert Home Prod., Inc.*, 714 S.W.2d 506 (Mo. 1986)

*Doe by Doe v. B.P.S. Guard Servs., Inc.,* 945 F.2d 1422 (8th Cir. 1991)

*Daugherty v. Allee's Sports Bar & Grill*, 260 S.W.3d 869 (Mo. Ct. App. 2008)

*Maniaci v. Interurban Express Co.*, 182 S.W. 981 (Mo. 1916)

3. Whether Plaintiff raised a genuine issue of material fact that Defendant ratified Doe's conduct when Defendant failed to timely address or sanction it.

*BE & K Const. Co. v. N.L.R.B.,* 23 F.3d 1459 (8th Cir. 1994)

*Compton v. Vaughan,* 222 S.W.2d 81 (Mo. 1949)

*Egnatic v. Nguyen,* 113 S.W.3d 659, 676 (Mo. Ct. App. 2003)

## STATEMENT OF THE CASE

Tashman was born in the United States but is of Jordanian/Middle Eastern descent. App. 326-327, 329; R. Doc. 34-1, at 2-3, 5. On September 19, 2019, he entered AAP's store near his home in Florissant, Missouri, for the purpose of purchasing a MAP Sensor[2] and testing a car battery. App. 336-337; R. Doc. 34-1, at 12-13. AAP advertises free battery testing and charging to induce customers into their stores to generate sales. App. 372-373, 452, 568; R. Doc. 34-3, at 6-7; R. Doc. 34-4, at 49; R. Doc. 34-7, at 7. Performing free battery testing is a "*moneymaking proposition*" for AAP. App. 452; R. Doc. 34-4, at 49. Consistent with AAP's marketing plan, Tashman intended to purchase a new battery if his old battery failed to charge. App. 337; R. Doc. 34-1, at 13.

Upon entering the store, Tashman approached AAP's salesperson, Doe, and informed him that he wanted to test his battery. App. 339, 377; R. Doc. 34-1, at 15; R. Doc. 34-3, at 11. Doe is a white male. App. 368, 501; R. Doc. 34-3, at 2; R. Doc. 34-6, at 44. Doe testified that there was nothing unusual about a customer coming in to ask that a battery be charged. App. 378; R. Doc. 34-3, at 12.

AAP employees described Tashman as appearing "*of a different descent.*" App. 574-575; R. Doc. 34-7, at 13-14. Doe testified that he had previously waited on a woman who he (mistakenly) associated as being Tashman's wife because she

---

[2] "MAP" is an auto part acronym for "Manifold Absolute Pressure" sensor.

wore head gear or a scarf like someone from a Muslim or Middle Eastern background. App. 374-375; R. Doc. 34-3, at 8-9. In fact, Tashman and his wife are Christians who have never practiced the Muslim faith, and his wife does not wear head gear or a scarf. App. 648-650; R. Doc. 34-10; App. 648-650; R. Doc. 34-10.

Doe and Tashman walked back to the battery testing counter where Doe threw a piece of paper and a pen on Tashman's battery and told him: *"Put your damn name and number on that paper."* App. 340, 341, 343, 378; R. Doc. 34-1, at 16, 17, 19; R. Doc. 34-3, at 12. Tashman said *"Excuse me,"* and Doe responded by yelling: *"Go back to your damn country, go to your camel country," "I get off in a few minutes, I'll kick your ass,"* "*I'm going to beat your ass,*" and telling Tashman to "*get the fuck out*" of the store 4 or 5 times, among other threats to Tashman and his family. App. 341; R. Doc. 34-1, at 17; App. 342-343; R. Doc. 34-1, at 18-19; App. 330, 344; R. Doc. 34-1, at 6, 20; App. 379, 393, 400; R. Doc. 34-3, at 13, 27, 34; App. 357-358; R. Doc. 34-2, at 1-2. AAP admits that "Doe continued to shout derogatory and racist statements at Tashman." App. 280, R. Doc. 29-2, at 2, at ¶13.

Two employees had to restrain Doe and push him to the back of the store. App. 578-580, 584; R. Doc. 34-7, at 17-19, 23; App. 596, 599-602; R. Doc. 34-8, at 7, 10-13. Multiple employees, including the Manager, then told Tashman to

leave the store. App. 587; R. Doc. 34-7, at 26; App. 612-613; R. Doc. 34-8, at 23-24. Doe and other employees testified that Tashman never threatened Doe, never exhibited anger towards him and never became physical towards Doe in any way. App. 610-611; R. Doc. 34-8, at 21-22; App. 381; R. Doc. 34-3, at 15. The entire incident was recorded on the store's video cameras.

Within 3 to 5 minutes of leaving the store, Tashman called AAP's corporate offices and reported the incident to "*Brittany*." App. 351-352; R. Doc. 34-1, at 27-28. This phone conversation was recorded by AAP. (*See* transcription App. 357-366; R. Doc. 34-2). While *"still shaking"* and *"in fear of [his] life,"* Tashman told Brittany: "*I could tell he was prejudice against me from like the way he was talking to me and the stuff he said to me. Like go back to your country and all this other stuff*." App. 358; R. Doc. 24-2, at 2; App. 357-359, 362, 365; R. Doc. 34-2 at 1-3, 6, 9. Brittany then called the store manager, who confirmed that Doe had threatened to "*kick [Tashman's] ass. Those were his exact words.*" App. 363; R. Doc. 24-2, at 7. Tashman repeatedly requested that the store video be reviewed, and Brittany assured him that the matter would be escalated to the District Manager. App. 364; R. Doc. 34-2, at 8.

The District Manager, Dante Maranan ("Maranan"), received an e-mail that same day informing him of Tashman's report. App. 411; R. Doc. 34-4, at 8; App. 412-413; R. Doc. 34-4, at 9-10. Maranan called the store manager and other



Appellate Case: 22-1949 Page: 13 Date Filed: 07/15/2022 Entry ID: 5177859

employees who confirmed that they had to get between Doe and Tashman to prevent a physical altercation. App. 422, 424-425; R. Doc. 34-4, at 19. 21-22. Maranan also spoke to Doe, who admitted using foul language, cussing, and telling Tashman that he was going to "*kick his ass*." App. 427, 428; R. Doc. 34-4, at 24-25. Despite confirming the incident, neither Maranan nor anyone else at AAP disciplined Doe in any way. App. 396, 400, 454-457; R. Doc. 34-3, at 30-34; R. Doc. 34-5. In fact, Doe testified that he was told that AAP did ***not*** want to fire him:

> Q: *Why do you say they didn't want to fire you?*
>
> A: *Well, they kept me up, and they all said they didn't want to fire me.*

App. 383; R. Doc. 34-3, at 17.

> A: *But if they wanted to fire me, they would have fired me reasonably fast, wouldn't they?*
>
> Q: *No. I would agree with [you]. I would think that they would have fired you on the spot.*
>
> * * *
>
> Q: Got you. *So the Dante Maranan had expressed to you that he did not want to fire you, even though he knew what had happened?*
>
> A: *Yes.*

App. 383-384; R. Doc. 34-3, at 17-18.

Louis Hogan ("Hogan") was AAP's Senior Human Resources Manager for the Midwest Region. App. 459-461; R. Doc. 34-6, at 2-4. Hogan testified that he was not made aware of the September 19, 2019, incident until November 1, 2019,



Appellate Case: 22-1949 Page: 14 Date Filed: 07/15/2022 Entry ID: 5177859

when he received a call from one of AAP's attorneys informing him of a letter from Tashman's counsel. App. 462-463, 467-468, 471; R. Doc. 34-6, at 5-6, 10-11, 14. Hogan testified that Maranan should have escalated this incident to him immediately on the day of the incident or the following day, but Maranan did not do so. App. 470-471; R. Doc. 34-6, at 13-14; App. 479-560; R. Doc. 34-6, at 22-103. In addition, in violation of AAP policy, no one prepared a written incident report documenting the incident. App. 524, 526-527; R. Doc. 34-6, at 67, 69-70, App. 478, R. Doc. 34-6, at 21; App. 429, 434, 435, 527, 631; R. Doc. 34-4, at 26, 31-32; R. Doc. 34-6, at 70; R. Doc. 34-9, at 11. Indeed, Maranan testified that he never even viewed the store video until after the incident was escalated to Hogan on November 1, 2019 - - more than 6 weeks later. App. 417, 420, 423, 426, 433; R. Doc. 34-3, at 14, 17, 20, 23, 20. Hogan testified that when he viewed the video, he agreed that Doe's actions constituted a threat of violence. App. 538; R. Doc. 34-6, at 81.

Maranan testified that on November 1, 2019, Hogan told him to terminate Doe. App. 436; R. Doc. 34-4, at 33. AAP's Vice President of Operations also told Maranan *multiple times* to terminate Doe. App. 443-444, 448; R. doc. 34-3, at 40, 41, 45. Despite those directives, Maranan did not terminate Doe until November 12, 2019 - - nearly two (2) months after the September 19, 2019, incident. App. 448-449, 451, 455; R. Doc. 34-4, at 45-46, 48; R. Doc. 34-5. Even then, Doe

testified that Maranan never told him why they had to let him go. App. 394; R. Doc. 34-3, at 28. In fact, Maranan told Doe that he was still *"free to come into the store*." App. 450; R. Doc. 34-4, at 47.

On July 21, 2020, Tashman filed his Complaint in the United States District Court for the Eastern District of Missouri alleging unlawful discrimination under 42 U.S.C. § 1981, as well as Missouri state law claims for assault and intentional infliction of emotional distress. App. 007; R. Doc. 1. On September 1, 2021, AAP filed its Motion for Summary Judgment. App. 025-030; R. Doc. 29.

On April 8, 2022, the District Court entered Judgment granting AAP's Motion for Summary Judgment on all counts. App. 771-790; R. Doc. 49; App. 791; R. Doc. 50. As to Count I for violation of § 1981, the district court determined that *Green v. Dillard's, Inc.*, 483 F.3d 533, 541 (8th Cir. 2007), required Tashman to show that AAP knew or should have known of Doe's racially hostile propensities in order to establish the element of "discriminatory intent." App. 782; R. Doc. 49, at 12. As to Count II for assault and Count III for intentional infliction of emotional distress, the district court held that committing assault is not inherent to the employment of a sales representative and has the effect of negatively impacting AAP's sales and, therefore, no reasonable jury could conclude that Doe was acting in the course and scope of his employment when he attacked Tashman. App. 783-86; R. Doc. 49, at 13-16. The district court further held that AAP did not



Appellate Case: 22-1949 Page: 16 Date Filed: 07/15/2022 Entry ID: 5177859

ratify Doe's conduct even though AAP failed to discipline Doe following the incident, and only did so two months later after Plaintiff's counsel threatened litigation. App. 784; R. Doc. 49, at 14.

On May 5, 2022, Tashman filed a timely Notice of Appeal. App. 792; R. Doc. 51.



Appellate Case: 22-1949 Page: 17 Date Filed: 07/15/2022 Entry ID: 5177859

## SUMMARY OF THE ARGUMENT

The district court erred in granting summary judgment on Tashman's § 1981 claim (Count I) because it erroneously concluded that, to establish discriminatory intent, this Court's decision in *Green*, 483 F.3d 533, required Tashman to show that AAP knew or should have known of Doe's racially hostile propensities. While *Green* establishes that such knowledge is one way to establish liability, *Green* does not preclude other methods of establishing liability via agency law principles. In fact, *Green* favorably cited various cases from other courts holding retailers liable under § 1981 for the actions of their non-supervisory employees pursuant to such principles, including without limitation the doctrine of *respondeat superior*. The district court's failure to analyze and take into consideration these other principles of vicarious liability under § 1981 was therefore erroneous. Tashman presented evidence establishing a genuine issue of material fact as to this issue, and summary judgment was thus inappropriately granted.

The district court also erred in granting summary judgment on Tashman's state law claims for assault (Count II) and intentional infliction of emotional distress (Count III) by finding that Doe's conduct was not committed in the scope of his employment because, the district court reasoned, assault is not inherent to the employment of a sales representative and has the effect of negatively impacting AAP's sales. However, under Missouri law, as long as the act is incidental to the

employer's business, it is performed in the course and scope of employment, even if mistakenly or ill-advisedly done. *Daugherty v. Allee's Sports Bar & Grill*, 260 S.W.3d 869, 873 (Mo. Ct. App. 2008). Even if the servant's *predominant* motive may be to benefit himself, *respondeat superior* will nonetheless apply so long as "the master's business actuates the servant to any appreciable extent." *Doe by Doe v. B.P.S. Guard Servs., Inc.,* 945 F.2d 1422, 1425 (8th Cir. 1991). Indeed, an inference arises that the employee is acting within the scope of employment if a "servant does the very act directed, or does the kind of act which he is authorized to perform within working hours and at an authorized place." *Id*. Here, because Doe was authorized to perform battery testing services and interact with customers in the process, and did so during working hours and at AAP's place of business, Tashman is entitled to an inference that Doe was acting within the course and scope of his employment. Given this inference, summary judgment was inappropriately granted.

The district court also erred in granting summary judgment on Tashman's state law claims for assault (Count II) and intentional infliction of emotional distress (Count III) by finding that AAP did not ratify Doe's conduct, even though Tashman presented evidence that AAP intentionally refused to discipline Doe for nearly two months, and did so only after receiving a letter from Tashman's attorney threatening litigation. A jury may interpret a principal's failure to protest,

dissent, disaffirm, or repudiate improper behavior as the principal's acquiescence to such behavior, giving rise to the principal's liability. *Compton v. Vaughan,* 222 S.W.2d 81, 83 (Mo. 1949). Furthermore, once a principal receives notice of an unauthorized act performed by an agent, the principal must ***immediately*** repudiate the agent's action or the principal is presumed to have ratified the act. *Egnatic v. Nguyen,* 113 S.W.3d 659, 676 (Mo. Ct. App. 2003) (emphasis added). As such, Tashman presented evidence sufficient to create a genuine issue of material fact as to AAP's ratification of Doe's conduct, and summary judgment was inappropriately granted.

Accordingly, the Court should reverse the judgments below as to Counts I, II and III and remand this case to the district court for further proceedings.

## STANDARD OF REVIEW

The Court of Appeals reviews a grant of summary judgment *de novo*. *Avenoso v. Reliance Standard Life Ins.,* 19 F.4th 1020, 1024 (8th Cir. 2021). "Summary judgment is proper only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* On a motion for summary judgment, "facts must be viewed in the light most favorable to the nonmoving party if there is a genuine dispute as to those facts." *Ricci v. DeStefano,* 557 U.S. 557, 586 (2009); citing *Scott v. Harris,* 550 U.S. 372, 380 (2007).



Appellate Case: 22-1949 Page: 21 Date Filed: 07/15/2022 Entry ID: 5177859

## ARGUMENT

**I. The District Court Erred in Holding that Evidence of Defendant's Knowledge of Its Employee's Prior Discriminatory Conduct or Propensities is *Required* to Demonstrate Discriminatory Intent Under 42 U.S.C. § 1981.**

"Pernicious distinctions among individuals based solely on their ancestry are antithetical to the doctrine of equality upon which this Nation is founded." *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 614 (1987). In addressing this evil, Congress enacted Section 1981 of the Civil Rights Act, 42 U.S.C. § 1981, which states that all persons within the jurisdiction of the United States shall have "the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a).

Section 1981 was "meant, by its broad terms, to proscribe discrimination in the making or enforcement of contracts against, or in favor of, any race." *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 295-296 (1976). The history of § 1981 reveals that Congress adopted an expansive notion of race, intending for § 1981 to "protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics," including persons of Arab/Middle Eastern descent. *Saint Francis College,* 481 U.S. at 613. Section 1981's protections apply to "all contracts," *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 304 (1994), which



Appellate Case: 22-1949 Page: 22 Date Filed: 07/15/2022 Entry ID: 5177859

undoubtedly includes the sale of goods or services at retail establishments. *See Perry v. Command Performance*, 913 F.2d 99 (3d Cir. 1990).

To establish a *prima facie* case under § 1981, a plaintiff must meet four elements: (1) membership in a protected class, (2) discriminatory intent on the part of the defendant, (3) engagement in a protected activity, and (4) interference with that activity by the defendant. *Gregory v. Dillard's, Inc*., 565 F.3d 464, 469 (8th Cir. 2009). The district court found that Plaintiff raised a genuine issue of material fact preventing judgment as a matter of law as to all but one of these elements: discriminatory intent. *See* App. 779-782; R. Doc. 49, at 9-12.

Citing to this Court's decision in *Green*, 483 F.3d 533, the district court held that "[i]n order to establish a 'discriminatory intent' by an employer related to an employee's misconduct, Plaintiff must show that the employer knew or should have known of the employee's racially hostile propensities." *See* App. 781; R. Doc. 49, at 11. For the reasons that follow, the district court was mistaken in its interpretation of *Green* and § 1981 and, therefore, this Court must reverse and remand this case for further proceedings.

Contrary to the district court's decision, this Court in *Green* did *not* hold that to establish discriminatory intent under §1981, a Plaintiff *must* show that the employer knew or should have known of its employee's racially hostile propensities. *See* App. 781; R. Doc. 49, at 11. Instead, *Green* merely held that



Appellate Case: 22-1949 Page: 23 Date Filed: 07/15/2022 Entry ID: 5177859

evidence that an employer knew or should have known of its employee's racially hostile propensities is but *one way* to establish the employer's liability. *See Green*, 483 F.3d at 541. In so doing, *Green* not only refused to *preclude* the application of other principles of agency law but cited those other principals favorably.

In *Green*, an African American couple alleged that they were prevented from making a retail purchase by the defendant's salesperson who had refused to wait on them, calling them "*fucking niggers*." *Id*. at 536. The defendant argued that it could not be held vicariously liable for the actions of its salesperson because it had no prior knowledge of the salesperson's hostile propensities. Rejecting the defendant's argument, the *Green* court noted that the plaintiffs had, in fact, produced evidence that this same employee had been disciplined for the same conduct in the past. *Id*. at 540-41. Expressly stating that its decision was made "*in the context of the evidence brought forward by the parties,*" the *Green* court held that the plaintiffs had made out a *prima facie* case of negligence under § 213 of the Restatement (Second) of Agency (hereinafter "Restatement") because the plaintiffs had, in fact, produced evidence showing that the employer knew or should have known of its employee's racially hostile propensities. *Id*. However, in applying Restatement § 213, which requires evidence of such knowledge, the *Green* court did <u>*not*</u> exclude other theories of vicarious liability. Indeed, a plain reading of *Green* supports the opposite conclusion.

This Court in *Green* acknowledged that it had previously recognized, but did not resolve, the issue of vicarious employer liability pursuant to § 1981 in *Daniels v. Dillard's, Inc.*, 373 F.3d 885 (8th Cir. 2004). *Green*, 483 F.3d at 540. In a footnote in *Daniels*, the Court had previously questioned whether a retailer could be held liable under Section 1981 pursuant to agency principles, but did not decide the issue. *Daniels*, 373 F.3d at 888 n. 4. In *Green*, this Court stated that the issue of vicarious employer liability could no longer be deferred and, following an agency law analysis, ultimately found that the facts in that case supported liability based on Restatement § 213. *Green*, 483 F.3d at 540.

Although *Green* came to its decision based on Restatement § 213, which requires prior knowledge by the employer of its employee's racist propensities, this Court expressly stated that it did so "*in the context of the evidence brought forward by the parties*" in that case. However, the *Green* Court additionally cited various cases from other courts which held that a retailer may also be held liable for its employees' acts pursuant to *other* agency law principles. *See Green*, 483 F.3d at 540 (citing *Arguello v. Conoco, Inc.*, 207 F. 3d 803, 810 (5th Cir. 2000), *Solomon v. Waffle House, Inc.*, 365 F. Supp. 2d 1312, 1328-29 (N.D. Ga. 2004); *Eddy v. Waffle House, Inc*. 335 F. Supp. 2d 693, 701 (D.S.C. 2004)). Citing with favor a long list of cases from other circuits, the *Green* Court stated: "The significant number of summary judgments denied or final judgments upheld against retailers



Appellate Case: 22-1949 Page: 25 Date Filed: 07/15/2022 Entry ID: 5177859

based on actions of their nonsupervisory employees is also ***worthy of note***." *Id*. at 40 (emphasis added).

The principles by which these other courts have found retailers liable for their employees' actions are outlined in various sections of the Restatement, which are cited in the courts' opinions. Of note is Restatement § 219, which imposes vicarious liability on the employer *without* evidence showing that the employer knew or should have known of its employee's racially hostile propensities. Rather, Restatement § 219 imposes liability based upon an analysis of whether the employee was acting within the course and scope of employment. In accordance with this concept, numerous decisions, in addition to those cited by this Court in *Green*, have held that retailers are vicariously liable under § 1981 pursuant to the doctrine of *respondeat superior* for the actions of their nonsupervisory employees. *See Sherman v. Kasotakis,* 314 F. Supp. 2d 843, 860 (N.D. Iowa 2004); *Mosby v. Int'l Paper Co.*, No. 5:07CV00314-WRW, 2008 WL 2669148, at *3 (E.D. Ark. July 1, 2008); *McKinnon v. YUM! Brands, Inc.*, No. 1:15CV00286, 2017 WL 3659166, at *7 (D. Idaho Aug. 14, 2017); *Sayed-Aly v. Tommy Gun, Inc.*, 170 F.Supp.3d 771 (E.D. Pa. 2016); *Williams v. Ramada Inn*, No. CIV.A. 3:2006-217, 2007 WL 2253564, at *5 (W.D. Pa. Aug. 3, 2007).

Perhaps the most compelling case holding a retailer liable for the acts of its employee without evidence of the employer's knowledge of prior bad acts or



Appellate Case: 22-1949 Page: 26 Date Filed: 07/15/2022 Entry ID: 5177859

propensities is the Fifth District's opinion in *Arguello*, which this Court favorably cited in *Green*. In *Arguello*, the plaintiff and her family stopped at a Conoco gas station to pump gas and went inside to pay with a credit card. *Arguello*, 207 F.3d at 805. The cashier asked to see identification, and stated that the plaintiff's out-of-state driver's license was not acceptable. *Id*. When the plaintiff disagreed, the cashier began to insult the plaintiff using profanity and racial epithets, including "*f***ing Iranian bitch*," and "*go back to where you came from you poor, f***ing Mexicans*." *Id*. After the plaintiff exited the store, the cashier used the intercom to continue yelling racial epithets and made obscene gestures through the window. *Id.* Citing Restatement § 219, the court held that agency principles applied under § 1981 to hold Conoco liable for its cashier's actions because the cashier had acted within the scope of her employment. *Id*. at 812.

Compelling factual similarities between the instant case and *Arguello* support application of the same agency principles. Federal law such as § 1981 should not provide protection for citizens in Texas while leaving Missourians vulnerable to the same discrimination without redress. The district court clearly erred in its interpretation of *Green* by denying Tashman the application of these same agency principles, which this Court previously cited favorably.

The district court failed to analyze whether Plaintiff raised a genuine issue of material fact precluding summary judgment as to Count I pursuant to the



Appellate Case: 22-1949 Page: 27 Date Filed: 07/15/2022 Entry ID: 5177859

application of other agency law principles. Instead, the district court limited its analysis to the erroneous conclusion that, as a matter of law, the *only* way to establish liability against AAP was to show that it knew or should have known of its employee's racially hostile propensities - - thereby precluding the application of other recognized agency law principles establishing liability under § 1981. As in *Green*, the district court should have recognized these other agency law principles and, based on the facts of *this* case, concluded that Plaintiff had presented sufficient evidence to establish a genuine issue of material fact that Doe acted within the course and scope of his employment, or that AAP had ratified Doe's actions. As set forth in Sections II and III below, Tashman did, in fact, present such evidence, thereby precluding summary judgment as to his § 1981 claim. Accordingly, this Court must reverse and remand the district court's grant of summary judgment under Count I.

## II. Plaintiff Raised a Genuine Issue of Material Fact that Doe Acted Within the Scope of Employment and as a Means of Doing Work for Defendant when Doe was Authorized to Interact with Plaintiff During the Battery Testing Process and Did So During Work Hours on Defendant's Premises.

The district court erred in determining that AAP was not liable for assault (Count II) or intentional infliction of emotional distress (Count III) pursuant to the doctrine of *respondeat superior* when it incorrectly held that (1) Doe was not acting within the course and scope of his employment, and (2) Doe's acts were not



Appellate Case: 22-1949 Page: 28 Date Filed: 07/15/2022 Entry ID: 5177859

done as a means for doing work for AAP. *See* App. 785, 786; R. Doc. 49, at 15-16. To the contrary, Tashman raised genuine issues of material fact that Doe acted within the course and scope of his employment and did so as a means for doing work for AAP. Therefore, this Court must reverse the district court's decision granting summary judgment on Counts II and III and remand for further proceedings.

### A. The District Court Failed to Apply the Appropriate Legal Standards.

Under the doctrine of *respondeat superior*, a master is liable for his servant's torts committed in the course and scope of his employment. *Burger Chef Sys., Inc. v. Govro*, 407 F.2d 921, 925 (8th Cir. 1969). The Missouri Supreme Court has routinely looked to the Restatement (Second) of Agency and its comments for guidance in the application of agency law to determine whether an employee has acted within the scope of his employment. *See, e.g., Carter v. Willert Home Prod., Inc.*, 714 S.W.2d 506, 512 (Mo. 1986), *abrogated on other grounds by Nazeri v. Missouri Valley Coll.*, 860 S.W.2d 303 (Mo. 1993). For example, in *Carter*, the defendant's human resources employee made defamatory statements against another former employee while responding to an employment verification request. *Id*. at 511. The employer argued that its human resources employee was authorized only to verify employment, not defame other former employees, and that any defamatory statements made were therefore outside the scope of



Appellate Case: 22-1949 Page: 29 Date Filed: 07/15/2022 Entry ID: 5177859

employment. *Id*. The Missouri Supreme Court disagreed, holding that even though the act of making a defamatory statement was not *itself* authorized, the act was nonetheless *incidental* to conduct that *was* authorized: employment verification. *Id*. at 512 (citing Restatement § 229).

Similarly, in this case, while Doe's acts of threatening to harm Plaintiff and making racially hostile statements were not *themselves* authorized, the threats and statements were nonetheless incidental to authorized conduct. There is no dispute that AAP markets free battery testing as an inducement to customers and to generate sales. App. 372-373, 452, 568; R. Doc. 34-3, at 6-7; R. Doc. 34-4, at 49; R. Doc. 34-7, at 7. The altercation between Tashman and Doe arose out of, and was *incidental* to, Doe's authorized conduct in performing such a test.

With respect to Count II, the district court erroneously concluded that Doe's actions were outside the scope of his employment because "Defendant's employees are expected to service potential customers, not commit assault," and "this type of activity is prohibited by Defendant's policy." *See* App. 784; R. Doc. 49, at 14. The fact that Defendant's policy prohibits this conduct does not inoculate AAP from liability. Indeed, such a rule would permit employers to avoid all liability simply by including a policy in their employee handbooks prohibiting all wrongful conduct, thus completely abolishing vicarious liability. The Missouri Supreme Court in *Carter* rejected this argument, stating that "[a]n act, although

forbidden, or done in a forbidden manner, may be within the scope of employment." *Id*. at 512 (citing Restatement § 230). The district court erred in holding otherwise when it granted summary judgment on Count II for assault.

The district court similarly erred in its analysis of *respondeat superior* with respect to Count III. In an apparent contradiction to its holding on Count II, the district court correctly noted in its analysis of Count III that "when a salesperson lies to a customer in order to make a sale, the tortious conduct is 'within the scope of employment because it benefits the employer by increasing sales, even though it may violate the employer's policies.'" *See* App. 786; R. Doc. 49, at 16 (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 756 (1998)). The district court then incorrectly reasoned that since Doe's conduct did not ultimately "benefit" AAP, his conduct was not within the scope of his employment. *See* App. 786; R. Doc. 49, at 16 The district court stated: "[Doe's] alleged conduct negatively impacts Defendant. Poor customer service results in diminished customer relationships and thus diminished profits. A business exists, in part, to generate profits. An employee's tortious action that disrupts this purpose is therefore outside the scope of employment." *Id*. Surely, nearly *every* wrong committed by an employee may result in diminish customer relationships and thus diminished profits. Applying the district court's reasoning, an employer could almost never be held liable for the wrongs of its employee's because all wrongs have the capacity



Appellate Case: 22-1949 Page: 31 Date Filed: 07/15/2022 Entry ID: 5177859

to diminish profits, thus effectively abolishing the theory of *respondeat superior.* This is not the applicable law.

Regardless of whether an employee's actions generate profits or otherwise benefit the employer, the employer may be held liable for those actions. *Doyle v. Scott's Cleaning Co*., 31 S.W.2d 242, 245 (Mo. Ct. App. 1930) ("The master who puts the servant in a place of trust or responsibility, or commits to him the management of his business or the care of his property, is justly held responsible when the servant, through lack of judgment or discretion, or from infirmity of temper, or under the influence of passion aroused by the circumstances and the occasion, goes beyond the strict line of his duty and authority and inflicts an unjustifiable injury upon another."). Here, Doe's actions, whether due to a lack of judgment, discretion, infirmity of temper, or influence of passion, are AAP's responsibility as they were clearly committed while performing the very tasks he was authorized to do (*i.e.*, interacting with customers and testing batteries). As such, the district court plainly erred in concluding that AAP cannot be held liable under Count III simply because Doe's actions may have the alleged effect of diminishing AAP profits.

As set forth in the following section, Doe's actions were within the course and scope of his employment and, therefore, AAP is liable for those actions as to both Counts II and III.

### B. Doe Acted Within the Scope of His Employment.

Whether an employee is acting within the scope of his employment must necessarily depend upon the facts and circumstances of each case. *Stokes v. Four-States Broadcasters*, 300 S.W.2d 426, 428 (Mo. 1957). "An act is within the course and scope of employment if (1) even though not specifically authorized, it is done to further the business or the interests of the employer under her general authority and direction and (2) it naturally arises from the performance of the employer's work." *Higgenbotham v. Pit Stop Bar & Grill, LLC*, 548 S.W.3d 323, 328 (Mo. App. 2018). Whether an employee is engaged in the scope and course of his employment is not measured by the time or motive of the conduct, but whether it was done by virtue of the employment and in furtherance of the business or "interests" of the employer. *Noah v. Ziehl,* 759 S.W.2d 905, 910 (Mo. Ct. App. 1988). If the employee is actually engaged in and about the employer's business and is carrying out these purposes, the employer is held responsible under the doctrine of *respondeat superior. Id.; Haehl v. Wabash Railway Co.,* 24 S.W. 737 (Mo. 1893); *Wellman v. Pacer Oil Co.,* 504 S.W.2d 55 (Mo. 1973).

Under these principles, an employer is held liable to a third person for a tort, even though not directed or commanded nor expressly authorized by the employer, provided that the employee or agent has committed such act while engaged in the activity falling within the scope of his authority or employment. *Bass v. Kansas*



Appellate Case: 22-1949 Page: 33 Date Filed: 07/15/2022 Entry ID: 5177859

*City Journal Post Co.,* 148 S.W.2d 548, 551 (Mo. 1941). If the act is fairly and naturally incident to the employer's business, although mistakenly or ill advisedly done, and did not arise wholly from some external, independent or personal motive, it is done while engaged in the employer's business. *Bova v. St. Louis Public Service Company,* 316 S.W.2d 140, 144 (Mo. Ct. App. 1958); *see also Noah*, 759 S.W.2d at 910-11 (citing Restatement § 245) (fact that an employee uses physical force not expressly authorized by the employer in the course of committing a tort does not necessarily mean that the tort is outside the course and scope of employment).

Further, a servant may act within the scope of his employment even though pursuing his own ends, if he is at the same time doing his master's business. *B.P.S. Guard Servs.,* 945 F.2d at 1425. The Restatement highlights this principle in §§ 235 and 236. *Id.* Pursuant to § 235, "An act of a servant is not within the scope of employment if it is done with *no* intention to perform it as a part of or incident to a service on account of which he is employed." (Emphasis added). Under § 236, "[c]onduct may be within the scope of employment, although done *in part* to serve the purposes of the servant…." (Emphasis added). In fact, the servant's *predominant* motive may be to benefit himself, but *respondeat superior* will nonetheless apply so long as "the master's business actuates the servant to *any* appreciable extent." *Id.* at cmt. b. (emphasis added)*; See also B.P.S. Guard Servs.,*

945 F.2d at 1425; *Foster, v. Campbell,* 196 S.W.2d 147, 150 (Mo. 1946) (citing same principle from the first Restatement of Agency).

Missouri courts follow the Restatement's principle that if a "servant does the very act directed, or does the kind of act which he is authorized to perform within working hours and at an authorized place," an inference arises that he is acting within the scope of employment. *See B.P.S. Guard Servs.,* 945 F.2d at 1425 (citing Restatement § 235 at cmt. a). For example, in *Linam v. Murphy,* 232 S.W.2d 937 (Mo. 1950), a flight instructor was deemed to have acted within the scope of his employment when he took control of a plane, albeit for his own enjoyment, because he was performing an activity of the same type he was hired to perform. Under these facts, the plaintiff's claim was sufficient to send to the jury. *Id*. at 942. Similarly, in *B.P.S. Guard Servs.,* 945 F.2d at 1425, security guards surreptitiously videotaped fashion models changing clothes at a fashion show. This Court held that the employees engaged in exactly the type of activity their employer had bade them to do when practicing taping with a VCR and that they were furthering their employer's business at the same time they were pursuing their own gratification. *Id*. at 1426.

"If the act is fairly and naturally incidental to the employer's business, although mistakenly or ill-advisedly done, and did not arise wholly from some external, independent or personal motive, it is done while engaged in the

employer's business." *P.S. v. Psychiatric Coverage, Ltd.,* 887 S.W.2d 622, 624 (Mo. Ct. App. 1994). "The key word is '*wholly*.'" *Daugherty*, 260 S.W.3d at 873. Although the employee's personal motive may have played a role in his actions, if the employee still performed the action for the benefit of the employer, the employee's actions are not *wholly* from some external independent or personal motive. *See Daugherty,* 260 S.W.3d at 873 (bartender's practical joke of placing a toothpick in a beer, while for her own personal motive, was not *wholly* from some external source because she still served the beer for the benefit of her employer).

In this case, Doe was actively engaged in providing AAP's battery-testing service to Tashman at the time of the altercation - - an act that AAP promoted to generate sales and profits, and which Doe was authorized to perform. App. 372-373, 452, 568; R. Doc. 34-3, at 6-7; R. Doc. 34-4, at 49; R. Doc. 34-7, at 7; App. 452; R. Doc. 34-4, at 49. It was at that time, and in connection with performing that service, that Doe's offensive and aggressive conduct occurred: Doe threw down a piece of paper and pen and demanded that Tashman write down his name, stating, "*Put your damn name and number on that paper*." App. 341; R. Doc. 34-1, at 17. When Tashman responded, "*Excuse me*," Doe yelled, *"Go back to your damn country, go to your camel country," "I get off in a few minutes, I'll kick your ass,"* "*I'm going to beat your ass,*" telling Tashman to "*get the fuck out*" of the store 4 or 5 times, and made numerous other threats directed at harming Tashman



Appellate Case: 22-1949 Page: 36 Date Filed: 07/15/2022 Entry ID: 5177859

and his family. App. 341; R. Doc. 34-1, at 17; App. 342-343; R. Doc. 34-1, at 18-19; App. 330, 344; R. Doc. 34-1, at 6, 20; App. 379, 393, 400; R. Doc. 34-3, at 13, 27, 34; App. 357-358; R. Doc. 34-2, at 1-2. Doe continued to shout derogatory and racist statements at Tashman, necessitating that two employees restrain Doe and push him to the back of the store to keep him from Tashman. App. 280; R. Doc. 29-2, at 2, ¶ 13; App. 578-580, 584; R. Doc. 34-7, at 17-19, 23; App. 596, 599-602; R. Doc. 34-8, at 7, 10-13.

While Doe departed from the normal *methods* of providing AAP's battery-testing service, *all* of his acts were carried out as part of completing that task for AAP. The record is devoid of any evidence that Doe's actions arose out of a personal or private dispute with Tashman occurring outside of performing battery testing for AAP, or that Doe and Tashman had carried some personal dispute originating outside of the workplace into the store. Doe was authorized to interact with customers and to perform battery testing, and his actions (although ill advised) were done to further that business interests of AAP.

While AAP, not unexpectedly, argues that it had no way of knowing that Doe would begin shouting racial epithets and threats at Tashman, its failure to anticipate Doe's actions does not preclude liability under *respondeat superior*. Regardless of whether Doe's acts were ill-advised, or even tortious, a defendant may be held liable if the acts were committed while engaged in defendant's



Appellate Case: 22-1949 Page: 37 Date Filed: 07/15/2022 Entry ID: 5177859

business. *Bova,* 316 S.W.2d at 144. *See also Noah*, 759 S.W.2d at 910-11. It is undisputed that Doe was engaged in AAP's business when interacting with Tashman in the process of testing his car battery. AAP may be held liable as long as Doe's actions were undertaken, at least in part, to serve AAP. *See B.P.S. Guard Servs.,* 945 F.2d at 1425. There can be no question that Doe's actions were, at least in part, actuated for the purpose of providing battery testing services to AAP's customer, Tashman.

Because Doe was authorized to interact with Tashman and authorized to conduct battery testing for AAP's business purposes, and did so during working hours and at AAP's place of business, Tashman is entitled to an inference that Doe was acting within the course and scope of his employment. *Id.*; Restatement § 235 at cmt. a. Where, as here, the facts and legitimate inferences to be drawn therefrom are in dispute, the issue is one for the jury. *Gardner v. Simmons*, 370 S.W.2d 359, 361 (Mo. 1963); *Benham v. McCoy*, 213 S.W.2d 914, 919 (Mo. 1948). Therefore, a genuine issue of material fact exists sufficient to preclude summary judgment on Counts II and III.

### C. Public Policy Dictates the Imposition of *Respondeat Superior* Liability.

*Respondeat superior* is one of the oldest traditions in the practice of law, and it has long been the position of the Missouri Supreme Court that the protection of

the public necessitates the principle of vicarious liability in the context of businesses who serve it:

> In all such cases the rule applies *respondeat superior*; and it is founded upon public policy and convenience, for in no other way could there be any safety to third parties in dealings either directly with the principal or indirectly through the instrumentality of agents. In every such case the principal holds out the agent as competent and fitted to be trusted; and thereby, in effect, he warrants his fidelity and good conduct in all matters within the scope of his agency.

*Maniaci v. Interurban Express Co.*, 182 S.W. 981, 985 (Mo. 1916) (citing Story on Agency, § 453).

Thus, the Missouri Supreme Court has held that businesses are liable for the acts their agents are "left at liberty to do," in furtherance of such public policy, even if not authorized:

> The master is liable for the acts of his servant, not only when they are directed by him, but also when the scope of his employment or trust is such that he has been left at liberty to do, while pursuing or attempting to discharge it, the injurious act complained of. It is not merely for the wrongful acts he was directed to do, but the wrongful acts he was suffered to do, that the master must respond.

*Id.* (citing Cooley on Torts (3d Ed.) § 626).

Missouri courts have acknowledged that the public is required to come into contact with agents in dealing with corporations and, therefore, "if for no other reason, the principal should not be permitted to withdraw from the business and turn the same over to agents who have no regard for the public welfare, and thereby escape responsibility which he would have to bear if attending to the

business in person." *Id*. at 983. As such, "[i]t is not imposing too great a hardship on either corporations or individuals, to require them to respond in damages to legitimate patrons, for unprovoked, wanton, and malicious assaults, inflicted upon them . . . ."

In *Meniaci*, the Missouri Supreme Court held a business liable when its agent met a customer, albeit outside of work hours and off-premises, and demanded the customer sign a receipt for a consignment of fruit. *Id*. While the customer signed the receipt, the agent suddenly and without warning drew a pistol and shot the customer. *Id.* The court determined that the agent was acting within the scope of employment, as the customer was present at the agent's invitation, for a legitimate purpose, and the customer and agent were in the midst of the very business which had called them together at the time the shooting occurred. *Id.*

The same public policy principles must apply here. Doe's behavior occurred during work hours, at AAP's store, during an interaction intended to increase AAP's bottom line. AAP entrusted and authorized Doe to interact with customers such as Tashman. Under the applicable law, AAP may be held liable for Doe's wrongful acts which Doe undertook in the course and scope of his employment.

For all of the above reasons, the district court erred in granting summary judgment, and its decision must be reversed and remanded for further proceedings.



Appellate Case: 22-1949 Page: 40 Date Filed: 07/15/2022 Entry ID: 5177859

### III. Plaintiff Raised a Genuine Issue of Material Fact that Defendant Ratified Doe's Conduct When Defendant Failed to Timely Address or Sanction It.

As an alternative to the doctrine of *respondeat superior,* retail employers may also be found liable for their employees' acts pursuant to the theory of ratification. "Under Missouri law, ratification is an express or implied adoption or confirmation by one person, with knowledge of all material matters, of an act performed on [their] behalf by another who lacked the authority to do so." *Newman v. Schiff*, 778 F.2d 460, 467 (8th Cir. 1985) (citing *Hyken v. Travelers Ins. Co.*, 678 S.W.2d 454, 459 (Mo. Ct. App. 1984); other citations omitted). In effect, ratification is "confirmation after conduct." *Springfield Land and Develop. Co. v. Bass*, 48 S.W.3d 620, 628 (Mo. Ct. App. 2001) (citation and internal quotation marks omitted). "[R]atification occurs when person A confirms or adopts the conduct of person B, who acted on behalf of person A in absence of person A's authority." *Murphy v. Jackson Nat'l Life Ins. Co.*, 83 S.W.3d 663, 668 (Mo. Ct. App. 2002) (citation omitted).

Ratification serves to authorize that which was unauthorized. *Newman,* 778 F.2d at 467. As the Missouri Supreme Court explained: "Where one assumes without authority to act as the agent of another, the latter's ratification of the transaction relates back and establishes the relation of employer and employee with all of its incidents including the employer's liability for the employee's wrongful



Appellate Case: 22-1949 Page: 41 Date Filed: 07/15/2022 Entry ID: 5177859

acts and omissions." *Rider v. Julian*, 282 S.W.2d 484, 497 (Mo. 1955); *See also* Restatement (Second) of Agency § 82 ("Ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him.").

Ratification may be accomplished in either of two ways: "(a) a manifestation of an election by one on whose account an unauthorized act has been done to treat the act as authorized, or (b) conduct by him justifiable only if there were such an election." *BE & K Const. Co. v. N.L.R.B.,* 23 F.3d 1459, 1466 (8th Cir. 1994) (citing Restatement § 83). For example, knowing acceptance of the benefit of a transaction ratifies the act of entering into the transaction. *Weisz v. Great American Title Q 1-10301, LLC,* 603 S.W.3d 336, 344 (Mo. Ct. App. 2020).

A principal's failure to sanction an agent's improper behavior may be deemed ratification thereof, giving rise to the principal's liability. *See BE & K Const.,* 23 F.3d at 1499 (quoting Restatement § 94) ("An affirmance of an unauthorized transaction can be inferred from a failure to repudiate it."). *See also, e.g., Siguenza-Chavez,* 2021 WL 5103922, at *3-4 (defendant's failure to suspend, terminate, or discipline employees created a genuine issue of material fact as to whether employer ratified employee's conduct); *see also Sherman,* 314 F. Supp. 2d at 861 (applying Restatement § 217C, employer liable for punitive damages after

supervisor failed to (1) confront waiter after witnessing racially discriminatory acts, and (2) fire waiter after promising patrons he would do so).

Once a principal receives notice of an unauthorized act performed by an agent, the principal must *immediately* repudiate the agent's action, or the principal is presumed to have ratified the act. *Egnatic,* 113 S.W.3d at 676; *see also Sooter v. Magic Lantern, Inc.,* 771 S.W.2d 359, 363 (Mo. Ct. App. 1989) ("[a]n unauthorized act of an agent may be affirmed by a principal who fails to repudiate the act after learning of it."); *Compton,* 222 S.W.2d at 83 (Failure of the principal to "protest, or dissent, or disaffirm or repudiate ... will be liberally construed in favor of the ratification by the principal."); *Long's Marine, Inc. v. Boyland*, 899 S.W.2d 945, 948 (Mo. Ct. App. 1995) (ratification found when there was no immediate repudiation of contract and acquiescence continued for a "considerable time").

Whether or not a principal has ratified the unauthorized actions of an agent or purported agent is a factual question. *Weisz,* 603 S.W.3d at 344. If, as in this case, the circumstances are subject to differing interpretations, then summary judgment is inappropriate, and the issue should be submitted to the trier of fact. *Id.*

Here, the district court held that because AAP *eventually* terminated Doe's employment, it could not have ratified Doe's conduct. However, the circumstances of Doe's termination are subject to differing interpretations. The



Appellate Case: 22-1949 Page: 43 Date Filed: 07/15/2022 Entry ID: 5177859

district court failed to take into account the undisputed fact that AAP did *not* terminate Doe or take *any* disciplinary action against him for nearly two months, and then did so only *after* AAP received a letter from Tashman's attorney threatening litigation. The district court further failed to take into account the fact that Doe testified that he was told by his Manager and District Manager that AAP did not want to fire him, and that he believed that the fact that they did not do so immediately meant that they had somehow condoned his actions. "*But if they wanted to fire me, they would have fired me reasonably fast, wouldn't they?*" App. 383-384; R. Doc. 34-3, at 17-18. Indeed, ignoring its owns written policies and procedures, AAP did not document the incident, or escalate the matter to its corporate offices. App. 524, 526-527; R. Doc. 34-6, at 67, 69-70, App. 478, R. Doc. 34-6, at 21; App. 429, 434, 435, 527, 631; R. Doc. 34-4, at 26, 31-32; R. Doc. 34-6, at 70; R. Doc. 34-9, at 11; App. 470-471; R. Doc. 34-6, at 13-14; App. 479-560; R. Doc. 34-6, at 22-103.

There is equally no dispute that immediately after the altercation Tashman reported the full details of the incident to AAP's corporate offices, who immediately notified the store Manager and District Manager. *See* transcription App. 357-366; R. Doc. 34-2; App. 411; R. Doc. 34-4, at 8; App. 412-413; R. Doc. 34-4, at 9-10; App. 422, 424-425; R. Doc. 34-4, at 19. 21-22. Despite having full knowledge of the incident, including video and audio recordings, AAP chose to do



Appellate Case: 22-1949 Page: 44 Date Filed: 07/15/2022 Entry ID: 5177859

***nothing***. It was not until AAP received a letter from Tashman's attorney threatening litigation that AAP was forced to take corrective action. App. 462-463, 467-468, 471; R. Doc. 34-6, at 5-6, 10-11, 14. Even then, Maranan did so reluctantly, having to be *repeatedly* instructed by his superiors that he must terminate Doe. App. 436; R. Doc. 34-4, at 33; App. 443-444, 448; R. doc. 34-3, at 40, 41, 45. Despite those directives, it took nearly another two weeks for Maranan to *actually* act and terminate Doe's employment. App. 448-449, 451, 455; R. Doc. 34-4, at 45-46, 48; R. Doc. 34-5. When he finally did so, Maranan chose not to inform Doe that his termination was due to his unprovoked attack on Tashman. App. 394; R. Doc. 34-3, at 28. Given these facts and circumstances, a reasonable jury could surmise, as did Doe himself, that AAP had ratified and approved of his tortious conduct. Indeed, AAP has failed to offer any other explanation for the failure of its Manager and District Manager to take immediate action. As the circumstances of Doe's termination are clearly subject to differing interpretations, summary judgment was inappropriate, and the issue should be submitted to the trier of fact.

Tashman has established a genuine issue of material fact as to AAP's ratification of Doe's conduct. AAP's failure to hold Doe accountable, reprimand him for his racial outbursts, or otherwise address his misconduct for two months following the incident sufficiently establishes, at minimum, a genuine issue of a

material fact as to AAP's ratification of Doe's conduct. As such, a jury would be well within its purview to find that, absent the letter from Tashman's attorney and his pursuit of this lawsuit, Doe would never have been disciplined by AAP, thus ratifying and confirming his tortious behavior. As such, the district court erred in granting summary judgment on Counts II and III, and this Court must reverse and remand for further proceedings.

## CONCLUSION

Based on the foregoing, Plaintiff-Appellant Nicolas Tashman respectfully requests this Court reverse the district court's Judgment as to Counts I, II, and III and remand this case to the district court for further proceedings.

Dated this 15th day of July, 2022.



Appellate Case: 22-1949 Page: 46 Date Filed: 07/15/2022 Entry ID: 5177859

Respectfully submitted,

**MATHIS, MARIFIAN & RICHTER, LTD.**

*/s/ Mark S. Schuver*

Mark S. Schuver, #34713
Natalie T. Lorenz, #65566
Montana L. Sinn, #74225
Mathis, Marifian & Richter, Ltd.
23 Public Square, Suite 300
P.O. Box 307
Belleville, IL 62220
(618) 234-9800 Phone
(618) 234-9786 Fax
mschuver@mmrltd.com
nlorenz@mmrltd.com
msinn@mmrltd.com

*Attorneys for Plaintiff/Appellant Nicolas Tashman*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) this document contains 8,956 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14-point Times New Roman font.

Pursuant to Eighth Circuit Local Rule 28A(h)(2), this brief and the addendum accompanying it have been scanned for viruses and are virus-free.

/s/ *Mark S. Schuver*
Mark S. Schuver
*Attorney for Plaintiff-Appellant Nicolas Tashman*
Dated: July 15, 2022



Appellate Case: 22-1949 Page: 48 Date Filed: 07/15/2022 Entry ID: 5177859

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ *Mark S. Schuver*
Mark S. Schuver
*Attorney for Plaintiff-Appellant Nicolas Tashman*
Dated: July 15, 2022



Appellate Case: 22-1949 Page: 49 Date Filed: 07/15/2022 Entry ID: 5177859