No. 22-1949

## IN THE UNITED STATES DISTRICT COURT OF APPEALS FOR THE EIGHTH CIRCUIT

NICOLAS TASHMAN,

*Plaintiff-Appellant*,

v.

ADVANCE AUTO PARTS, INC.

*Defendant-Appellee.*

On Appeal from the United States District Court for the
Eastern District of Missouri, Case No. 20-00943
The Honorable Henry Edward Autrey, Judge

## BRIEF OF DEFENDANT-APPELLEE ADVANCE AUTO PARTS, INC.

Brian K. McBrearty, #36143MO
Lori A. Schmidt, #45561MO
Litchfield Cavo LLP
222 South Central Avenue, Suite 110
St. Louis, Missouri 63105
(314) 725-1227 - Phone
(314) 724-3006 - Facsimile
mcbreartyb@litchfieldcavo.com
schmidt@litchfieldcavo.com

*Attorneys for Defendant-Appellee
Advance Auto Parts, Inc.*

# SUMMARY OF THE CASE

On September 19, 2019, Appellant Nicolas Tashman ("Tashman"), a man of middle-eastern descent, entered the Advance Auto Parts, Inc. ("Advance") store in Florissant, Missouri to have a battery tested. (App. 07-017, R. DOC. 1). While in the store, Tashman and Advance's employee Kevin Doe ("Doe") entered into a verbal argument whereby Doe is alleged to have directed racist and threatening statements at Tashman. (App. 07-017, R. DOC. 1). After an investigation into the incident, Doe was terminated by Advance. (App. 034, R. DOC. 29, EX B at 84).

Tashman filed a five-count lawsuit against Advance for unlawful discrimination under 42 U.S.C. Section 1981, assault, intentional infliction of emotional distress, negligent hiring and retention, and negligent supervision. (App. 007-017, R. DOC 1).

At the close of discovery, Advance filed a Motion for Summary Judgment as to all five counts. (App. 025, R. DOC. 29). The District Court granted Advance summary judgment on all five counts finding Advance was not liable on all five counts under Federal and State law, as there was no evidence to support Tashman's claims. (App. 771-790, R. DOC. 50). The District Court's decision was based on sound and long-standing precedent in this Circuit. Thus, this Court must affirm the District Court's order.

Advance requests 20 minutes per side of oral argument.

Appellate Case: 22-1949    Page: 2    Date Filed: 09/16/2022 Entry ID: 5199180

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to United States Appellate Rule 26.1(a), Appellee Advance Auto Parts, Inc. states that it has no parent company and no publicly held company or corporation owns 10% or more of its stock.

Appellate Case: 22-1949     Page: 3     Date Filed: 09/16/2022 Entry ID: 5199180

# TABLE OF CONTENTS

**page**

SUMMARY OF THE CASE……………………………..………………………ii

CORPORATE DISCLOSURE STATEMENT…………………………..…… iii

TABLE OF CONTENTS…………………………………………...………...iv

TABLE OF AUTHORITIES……………………………………….…….....v

STATEMENT OF THE CASE………………...…………………………...1

SUMMARY OF THE ARGUMENT……………………………...……..7

STANDARD OF REVIEW……………………………………….…….... 11

ARGUMENT…………………………………………………….……..11

    I.     The District Court Did Not Err in Holding that Evidence of
          Defendant's Knowledge of Its Employee Kevin Doe's
          Prior Discriminatory Conduct or Propensities is Required to
          Demonstrate Discriminatory Intent under 42 U.S.C. Section 1981...……11

    II.    Plaintiff Did Not Raise a Genuine Issue of Material Fact that
          Kevin Doe Acted within the Scope of Employment……………..……15

          A. The District Court properly applied the appropriate legal standards…16

          B. Kevin Doe was not acting within the scope of his employment…..…21

          C. Imposing respondeat superior liability on Advance would violate
             public policy…………………………..……………………..28

    III.    Plaintiff Failed to Raise a Genuine Issue of Material Fact that
          Advance Ratified Kevin Doe's Conduct……………..……………30

CONCLUSION………………………………………….……………. 36

CERTIFICATE OF COMPLIANCE…………………………….……..37

CERTIFICATE OF SERVICE……………………………………………38

Appellate Case: 22-1949    Page: 4    Date Filed: 09/16/2022 Entry ID: 5199180

# TABLE OF AUTHORITIES

**<u>Cases</u>**                                                                                                                          **<u>Page</u>**

Arguello v. Conoco, Inc.,
207 F.3d 803 (5th Cir. 2000) .……………………………………………….....14, 15

Bass v. Kansas City Journal Post Co.,
148 S.W.2d 548 (Mo. 1941) ……………………………………….….….22, 25

Bova v. St. Louis Public Service Company,
316 S.W.2d 140 (Mo. Ct. App. 1958)……………………………………….22, 25

Burlington Industries, Inc. v. Ellerth,
524 U.S. 742 (1998)……………………………………………………………..21

Carter v. Willert Home Products, Inc.,
714 S.W.2d 506 (Mo. 1986) ……………………………………………18, 19, 20

Compton v. Vaughan,
222 S.W.2d 81 (Mo. 1949) …………………………………………………...33, 34

Daugherty v. Allee's Sports Bar and Grill,
260 S.W.3d 869 (Mo. App. 2008)………………………………..……22, 23

Doe by Doe v. B.P.S. Guard Services, Inc.
945 F.2d 1425 (8th Circ.1991)………………………………………………..22

Doe CS v. Capuchin Franciscan Friars,
520 F.Supp.2d 1124 (E.D. Mo. 2007)………………………………………...18

Doyle v. Scott's Cleaning Co.,
31 S.W.2d 242 (Mo. App. 1930) …………………………………………...21

Egnatic v Ngygen,
113 S.W.3d 659 (Mo. App. 2003) ………………………………………...32

Erie RR. Co. v. Tompkins,
304 U.S. 64 (1938) …………………………………………………...18

v

Foster v. Campbell,
196 S.W.2d 147 (Mo. 1946)……………………………………..………..22, 26

Gibson v. Brewer,
952 S.W.2d 239 (Mo. 1997)……………………....………………8, 9, 16, 18

Green v. Dillard's, Inc.,
483 F.3d 533 (8th Cir. 2007)……………………………….....…….7, 13, 14, 15

Gregory v. Dillard's, Inc.,
565 F.3d 464 (8th Cir. 2009)……………………………………………12, 15

Haehl v. Wabash Railway Co.,
24 S.W. 737 (Mo. 1893)……………………………….………………22, 24

Higgenbotham v. Pit Stop Bar & Grill, LLC,
548 S.W.3d 323 (Mo. App. 2018) ……………………………..……….22, 24

Linam v. Murphy,
232 S.W.2d 937 (Mo. 1950)……………………………..………..22, 26

Long's Marine, Inc. v. Boyland,
899 S.W.2d 945 (Mo. Ct. App. 1995)……………………………….....34

Maniaci v. Interurban Express Co.,
266 Mo. 633 (Mo. 1916)……………………………………………21, 28, 29, 30

Marksmeier v. Dale,
622 F.3d 896 (8th Cir. 2010)…………………………………..……....11

Newman v. Schiff,
778 F.2d 460 (8th Cir. 1985) ……………………………………….....31

Noah v. Ziehl,
759 S.W.2d 905 (Mo. Ct. App. 1988)…………………...………………....22, 23

P.S. v. Psychiatric Coverage, Ltd.,
887 S.W.2d 622 (Mo. Ct. App. 1994)…………………….………………22, 27

Appellate Case: 22-1949    Page: 6    Date Filed: 09/16/2022 Entry ID: 5199180

Siguenza-Chavez v. Double Check Company, Inc.,
4:19-CV-00769-BCW, 2021 WL 5103922 (W.D. Mo. July 13, 2013)…………...33

Sooter v. Magic Lantern, Inc.,
771 S.W.2d 359 (Mo. App. 1989)…………………………………………...32, 33

Tockstein v. P.J. Hamill Transfer Co.,
291 S.W.2d 624 (Mo. App. 1956) ………….……………….....……...21, 24, 29, 30

Wellman v. Pacer Oil.,
504 S.W.2d 55 (Mo. 1973)…………………...…………………...…….…22, 25

Wong v. Minnesota Department of Human Services,
820 F.3d 922 (8th Cir. 2015) …………………………………………………18

## **Other Authorities**

Restatement Statement (Second) of Agency Section 229 …………………………19

Restatement Statement (Second) of Agency Section 230...………………………..20

## STATEMENT OF THE CASE

Appellant Nicolas Tashman ("Tashman") is a United States Citizen of Arab/Middle Eastern descent. (App. 07-017, R. DOC. 1). On September 19, 2019, Tashman entered Advance Auto Part, Inc.'s ("Advance") store located in Florissant, Missouri. (App. 07-017, R. DOC. 1). Advance provides free testing and charging of batteries. (App. 07-017, R. DOC. 1). Tashman entered the store to test a car battery to determine if he needed to purchase a new battery. (App. 07-017, R. DOC. 1). As soon as he entered the store, Tashman informed Advance employee and sales representative Kevin Doe ("Doe") that he wanted to charge and test his battery to determine if he needed to purchase a new one. (App. 07-017, R. DOC. 1).

Doe handed Tashman two blank pieces of paper and Tashman asked Doe what he was supposed to do with the paper and Doe told him to put his name on it. (App. 07-017, R. DOC. 1). Tashman put his name on one of the pieces of paper and handed it back to Doe. *(*App. 07-017, R. DOC. 1). Doe then told Tashman: "God damn it, fill out the other paper. Put your damn name on there." (App. 07-017, R. DOC. 1). Doe stated, "I'm going to beat your ass right here, right now." (App. 07-017, R. DOC. 1). Another Advance employee grabbed Doe to restrain him. (App. 07-017, R. DOC. 1). Tashman remained standing near the battery testing area when Doe broke free from that other employee and moved towards Tashman. (App. 07-017, R. DOC. 1). Another employee took Doe to the back of the store. (App. 07-017, R.

1

DOC. 1). Tashman left the store. (App. 07-017, R. DOC. 1).

Advance strictly prohibits discrimination based on any legally protected status. (App. 032, R. DOC. 29, EX. B, at 143). This policy against discrimination is part of the Advance code of ethics and every employee is required to read and familiarize himself or herself with it. (App. 032, R. DOC. 29, EX. B, at 143).

Violations of these policies are not tolerated and can be cause for termination. The company policies include "Respect for Human Rights" which reads in part: "We must treat each of our team members, customers, vendors, suppliers and any other parties with whom we do business with dignity and respect." (App. 032-033, R. DOC. 29, EX. B, at 79, 145).

The policy goes on to state "Team members must be provided with a work environment that is safe and free from discrimination or harassment of any type. Advance strictly prohibits discrimination on the basis of race, color, religion, gender, pregnancy, age, national origin, ancestry, ethnicity, citizenship status, disability, marital status, sexual orientation, gender identity or expression, including transgender status, or any other legally protected status." (App. 033, R. DOC. 29, EX. B, at 146).

This policy also applies to customers who enter the store. (App. 033, R. DOC. 29, EX. B, at 146). Doe received training on these policies every year. (App. 033,

2

R. DOC. 29, EX. B, at 146).

During Doe's employment, Louis Hogan ("Hogan") served as a senior regional human resources manager for the Midwest region of Advance Auto Parts, Inc. (App. 033, R. DOC. 29, EX. B, at 7). The Midwest region encompassed the Florissant, Missouri store at issue in this case. (App. 033, R. DOC. 29, EX. B, at 15).

Doe became an employee of Advance as part of its integration with Carquest. Doe's transfer date was October 1, 2014. (App. 033, R. DOC. 29, EX. B, at 110). There is nothing in Doe's employee file showing previous write-ups or misconduct prior to this incident. (App. 033-034, R. DOC. 29, EX. B, at 110).

When Hogan learned of the misconduct of Doe alleged by Tashman, he conducted an investigation. (App. 034, R. DOC. 29, EX. B, at 39, 90). The employees Hogan spoke with during his investigation had no complaints about Doe. (App. 034, R. DOC. 29, EX. B, at 110). Based on his investigation, Hogan determined that Doe violated company policy prohibiting using obscenities at a customer. (App. 034, R. DOC. 29, EX. B, at 50). Hogan's investigation found that Doe chose to use language and statements that violated company policy which resulted in his termination. (App. 034, R. DOC. 29, EX. B, at 50).

Hogan recommended Doe's termination for violating company policy against

3

employees using obscenities at customers. (App. 034, R. DOC. 29, EX. B, at 50). Hogan recommended Doe's termination because he violated company policy requiring that employees treat all customers with dignity and respect. (App. 034, R. DOC. 29, EX. B, at 50). The Florissant store's district manager Dante Maranan terminated Doe based on Hogan's recommendation. (App. 034, R. DOC. 29, EX. D, at 121). Advance terminated Doe on November 12, 2019. (App. 449, R. DOC. 29, EX. D, at 151).

Employee Terri Forster ("Forster"), whose deposition was taken by Tashman's counsel on May 26, 2021, testified she had never heard Doe speak to a customer like he did to Tashman prior to this incident. (App. 035, R. DOC. 29, EX. E, at 21). Forster testified that she is unaware of any other incidents involving Doe where he either lost his temper or in any way threatened anyone. (App. 035, R. DOC. 29, EX. E, at 21).

Employee Doreen Mesick, whose deposition was taken by Tashman's counsel on May 27, 2021, testified that Doe was a good employee and she was not aware of any complaints about Doe. (App. 035, R. DOC. 29, EX. E, at 21).

Employee William Maddox ("Maddox"), whose deposition was taken by Tashman's counsel on May 27, 2021, testified that Doe was a "great employee." (App. 035, R. DOC. 29, EX. F, at 24). Maddox testified that he had no knowledge

4

of any complaints made against Doe either by coworkers or customers. (App. 035, R. DOC. 29, EX. F, at 24).

Employee Thomas Renfroe, whose deposition was taken by Tashman's attorney on May 26, 2021, testified that Doe was "easygoing" and that he had never had any problems with Doe at all. (App. 036, R. DOC. 29, EX. A, at 27). Renfroe testified that no other coworkers made any complaints to him about Doe. (App. 036, R. DOC. 29, EX. A, at 27).

The deposition of Advance District Manager Dante Maranan was taken by Tashman's attorney on July 14, 2021. (App. 036, R. DOC. 29, EX. G, at 41). He testified that prior to this incident, he never had any customer complaints towards Doe. (App. 036, R. DOC. 29, EX. G, at 41). Regardless, as a result of his behavior towards Tashman, Doe was terminated. (App 034, R. DOC. 29, EX. G, at 150).

On April 8, 2022, Tashman filed a lawsuit against Advance alleging five counts: Unlawful discrimination under 42 U.S.C. Section 1981, assault under Missouri law, intentional infliction of emotional distress under Missouri law, negligent hiring and retention under Missouri law and negligent supervision under Missouri law. [1] (App. 07, R. DOC. 1). After the completion of discovery, Advance

---

[1] Tashman has abandoned his claims for negligent hiring and retention as well as negligent supervision.

5

filed a Motion for Summary Judgment on all counts. (App. 025, R. DOC. 29). The District Court granted Advance's summary judgment on all counts finding that Advance was not vicariously liable for Doe's conduct because it did not know that Doe would act in such a manner towards customers, could not have anticipated Doe would act in such a manner towards customers and because Doe's actions were not performed in the scope of his employment because his sudden and unexpected mistreatment of a customer did not further the interests of Advance. (App. 771-791, R. DOC. 50).

Tashman has appealed of the District Court Judgment as to the remaining three counts for violation of Section 1981, assault and intentional infliction of emotional distress. (App. 792, R. DOC. 51).

## SUMMARY OF ARGUMENT

The District Court properly granted Advance's Motion for Summary Judgment on Tashman's Section 1981 claim because the District Court properly concluded and applied long-established 8th Circuit law set forth in Green v. Dillard's, Inc., 483 F.3d 533 (8th Cir. 2007) that Tashman had to establish that Advance knew or should have known of Doe's racially hostile propensities in order to establish employer liability for the employee's conduct.

Green requires evidence of the employer's knowledge before an employer can be held vicariously liable for the misconduct of its employee in a Section 1981 claim. Id. at 541 (8th Cir. 200). As the Court noted in its July 15, 2022 Order, "In order to establish a 'discriminatory intent' by an employer related to an employee's misconduct, Plaintiff must show that the employer knew or should have known of the employee's racially hostile propensities." (App. 771-791, R. DOC. 49, at 11). Here, there was no evidence that Doe had ever behaved in such a manner. His employment record was clear of any such complaints. (App. 033-034, R. DOC. 29-1, at 4-5). His fellow employees never heard him utter any such words or act in any such manner towards any customer or co-worker prior to the events on September 19, 2019. (App. 035-036, R. DOC. 29-1, at 5-6).

The District Court distinguished the case at bar from the facts of *Green* because in *Green*, the Appellate Court noted the employer could be liable because

7

employee had been disciplined for similar conduct in the past whereas here, "plaintiff fails to produce evidence of *any* prior discriminatory conduct by Doe." (App. 771-791, R. DOC 49, at 12). The District Court found that there was no material issue of fact that Advance had no knowledge of any similar behavior by Doe prior to September 19, 2019. (App. 771-791, R. DOC. 49, at 18). Therefore, the District Court properly found that Tashman's Section 1981 claim against Advance for discrimination based on vicarious liability failed and summary judgment was properly granted.

The District Court also properly granted summary judgment on the state law claim of assault set forth in Count II which is based on the doctrine of respondeat superior. Relying on <u>Gibson v. Brewer</u>, 952 S.W.2d 239 (Mo. 1997), the District Court found that in order for Advance to be liable for Doe's assault, Tashman had to establish: 1) the acts were done within the scope of employment and 2) were done as a means or for the purpose of doing work assigned by the principal. (App. 771-791, R. DOC. 49, at 12-13). The District Court found an employee such as Doe is expected to service customers, *not commit assault*. (App. 771-791, R. DOC. 49, at 14). The District Court found there was no evidence that Doe was following the directions of Advance when he mistreated Tashman. (App. 771-791, R. DOC. 49, at 15). Furthermore, the District Court found Does' conduct was prohibited by Advance's policy. (App. 771-791, R. DOC. 49, at 14).

8

The District Court noted that even if it could be reasonably found that Doe's conduct was within the scope of his employment, the claim still failed because there was no material issue of fact that Doe's assault was not done as a means for doing work for Advance. (App. 771-791, R. DOC. 49, at 14-15). The District Court held there was no evidence from which a reasonable juror could find that Advance ratified Doe's conduct noting that an investigation had been conducted and Advance terminated Doe for his conduct. (App. 771-791, R. DOC. 49, at 18).

The District Court also relied on <u>Gibson</u>, 952 S.W.2d 239 (Mo. 1997) to find that Advance could not be liable for intentional infliction of emotional distress under the doctrine of respondeat superior unless there was evidence that Doe's conduct: 1) was within the scope of his employment and 2) was done for the purpose of doing work assigned by Advance. (App. 771-791, R. DOC. 49, at 12-13).

The District Court found no reasonable juror could find that the purpose of Doe's tortious conduct was to serve Advance. "On the contrary, his alleged conduct negatively impacts Defendant. Poor customer services results in diminished customer relationships and this diminished profits….An employee's tortious action that disrupts this purpose is therefore outside the scope of employment." (App. 771-791, R. DOC. 49, at 16).

As such, the District Court did not err in granting Advance summary judgment on the claim for intentional infliction of emotional distress.

9

Accordingly, the Court should affirm the judgment of the District Court in granting summary judgment on Counts I, II and III of Tashman's Complaint.

Appellate Case: 22-1949    Page: 17    Date Filed: 09/16/2022 Entry ID: 5199180

## ARGUMENT

## STANDARD OF REVIEW

This Court explained the standard of review to be applied when evaluating an appeal of the granting of a motion for summary judgment in <u>Marksmeier v. Dale,</u> 622 F.3d 896 (8th Cir. 2010). "We review the district court's grant of summary judgment de novo, viewing the facts in the light most favorable to the nonmoving party. *See Irving v. Dormire,* 586 F.3d 645, 647 (8th Cir.2009). We will affirm the grant of summary judgment if 'there is no genuine issue as to any material fact and ... the movant is entitled to judgment as a matter of law.' <u>Fed.R.Civ.P. 56(c).</u> Disputes that are not 'genuine,' or that are about facts that are not 'material,' will not preclude summary judgment. <u>See Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). 'Material facts' are those which might affect the outcome of the lawsuit. A dispute over an issue of fact is 'genuine' if there is sufficient evidence to allow a reasonable jury to find for the non-moving party on that issue.' <u>DuBose v. Kelly</u>, 187 F.3d 999, 1000–01 (8th Cir.1999)." <u>Id</u>. at 899-900 (8th 2010).

I.      **The District Court Did Not Err in Holding that Evidence of Advance Auto Parts, Inc.'s Knowledge of Its Employee Kevin Doe's Prior Discriminatory Conduct or Propensities was Required to Demonstrate Discriminatory Intent under 42 U.S.C. Section 1981**

In Count I of his Complaint, Tashman alleged Advance, through its employee Doe, unlawfully discriminated against him under 42 U.S.C. Section 1981. (App. 07-

11

017, R. DOC. 1, at 1). Tashman specifically claimed that Doe had violated his rights to contract because of his middle-eastern descent. (App. 07-017, R. DOC. 1, at 6). Tashman alleged that Doe's contract interference occurred when Doe began yelling racist and threatening remarks to him as he sought to have his car battery checked inside the Advance's store. (App. 07-017, R. DOC. 1, at 6). Tashman sought money damages against Advance under a theory of vicarious liability. (App. 07-017, R. DOC. 1, at 6-7).

To establish a prima facie case under Section 1981, plaintiff must meet four elements: (1) membership in a protected class; (2) discriminatory intent on the part of defendant; (3) engagement in a protected activity; and (4) interference with that activity by the defendant. Gregory v. Dillard's, Inc., 565 F.3d 464, 469 (8th Cir. 2009).

The District Court granted Advance summary judgment on Count I because Tashman failed to establish discriminatory intent on the part of defendant. (App. 771-791, R. DOC. 49, at 12). The District Court held that "In order to establish a 'discriminatory intent' by an employer related to an employee's misconduct, Plaintiff must show that the employer knew or should have known of the employee's racially hostile propensities. Green v. Dillard's, Inc., 483 F.3d 533, 541 (8th Cir. 2007)." (App. 771-791, R. DOC. 49, at 11).

12

The District Court properly applied <u>Green's</u> employer liability standard in its decision to grant summary judgment. The District Court noted that regardless of what transpired between Tashman and Doe, "….there is *no* material dispute as to whether the employer knew or should have known of Does' racially hostile propensities." (App. 771-791, R. DOC. 49, at 12). The District Court found the evidence established Advance had no prior knowledge of Doe's racist propensities finding that: 1) there was nothing in Doe's employee file showing any previous write-ups or misconduct; 2) no co-worker including Doe's manager had any knowledge of any prior misconduct by Doe – particularly any prior racists remarks or threats to customer. (App. 771-791, R. DOC. 49, at 12).

In accordance with the 8th Circuit's holding in <u>Green</u>, the District Court held that without any evidence that Advance knew or should of know of Doe's racially hostile propensities, Tashman's Section 1981 claim failed. (App. 771-791, R. DOC. 49, at 12).

On appeal, Tashman attempts to persuade this Court to abandon the employer liability standard clearly adopted in <u>Green</u> which requires evidence that an employer knew or should have known of the employee's racially hostile propensities before employer liability can be imputed in a Section 1981 case. <u>Green</u> at 540-541. "We conclude that plaintiffs have produced sufficient evidence to raise a jury question

13

about whether Dillard's knew or should have known of McCrary's racially hostile propensities…" Id. at 541.

Tashman oddly suggests that Green "did not exclude other theories of vicarious liability" such as the one adopted by the Fifth Circuit in Arguello v. Conoco, Inc., 207 F.3d 803 (5th Cir. 2000) -- but this is exactly what the 8th Circuit did. A clear reading of Green establishes the 8th Circuit thoughtfully rejected the Arguello's standard for imputing liability to an employer and adopted a "notice" standard. See id. at 540-541.

In Green, Dillard's argued that it could not be held vicariously liable for its employee's racist conduct. Id. at 540. The Green Court discussed the employer liability standard applied in Section 1981 claims by the Fifth Circuit which only requires evidence that the employee be acting within the scope of his employment duties when the conduct occurs. Id. The Green Court specifically discussed Arguello. Id. Despite its knowledge of the standards applied in other circuits and the Arguello case, the Green Court specifically adopted a different standard – one that requires that an employer have some prior notice of the employee's racist propensities. Id.

In Green, this Court held that Dillard's could be found vicariously liable because the Plaintiffs produced evidence that Dillard's "had reason to know that McCrary's hostile propensities could lead to incidents like the Greens experienced"

14

and reversed summary judgment. Id. at 541. Several employees, including McCrary's supervisor and the store manager, told the Greens that Dillard's had disciplined McCrary "for this" or that McCrary had had problems "with this" in the past which suggested prior knowledge of such misconduct by Dillard's. Id.

In Green, this Court clearly held that in order for a party to meet the discriminatory intent prong of the Gregory test for a Section 1981 claim, an employer *must or should* have knowledge of the employee's racist propensities thereby rejecting *Arguello*. Id. at 540-541. Neither in Green nor in any other case in this Circuit, has this Court adopted any other test for establishing discriminatory intent in a 1981 claim. *See* id. To adopt the Fifth Circuit standard would essentially make all employers in this Circuit guarantors of the acts of their employees without any knowledge or culpability.

The holding in Green remains the law in this Circuit and was properly applied by the District Court. Because the evidence establishes that Advance had no prior knowledge of Doe's racially hostile propensities, there is no issue of material fact that Tashman cannot show discriminatory intent on the part of Advance. As such, Advance cannot be held vicariously liable for Doe's misconduct under Section 1981 and summary judgment was proper.

## II. Tashman Did Not Raise a Genuine Issue of Material Fact that Employee Kevin Doe Acted within the Scope of Employment

15

### a. The District Court properly applied the appropriate legal standards for a state claim for vicarious liability for an employee's intentional torts.

In Counts II and III of his Complaint, Tashman alleged state law claims of assault and intentional infliction of emotional distress. As with the other claims, Tashman sought liability against Advance under a theory of vicarious liability. The District Court granted Advance summary judgment on the state law claims. The District Court, relying on <u>Gibson v. Brewer</u>, 952 S.W.2d 239 (Mo. 1997), found that in order for Advance to be liable for Doe's assault on Tashman, Tashman had to establish: 1) the acts were done within the scope of employment and 2) were done as a means or for the purpose of doing work assigned by the principal. (App. 771-791, R. DOC. 49, at 12-13).

In its analysis, the District Court found that Tashman failed to present a material issue of fact that Doe's acts were not done within the scope of employment. The District Court found that an employee such as Doe is expected to service customers, ***not commit assault***. (App. 771-791, R. DOC. 49, at 14). The District Court found there was no evidence that Doe was following the directions of Advance when he mistreated Tashman. (App. 771-791, R. DOC. 49, at 14). Furthermore, the District Court found Doe's conduct was prohibited by Advance's policy. (App. 771-791, R. DOC. 49, at 14). "Rather, Doe appeared to have been acting on his own, personal accord. Indeed, this type of activity is prohibited by Defendant's policy."

16

(App. 771-791, R. DOC. 49, at 14). The District Court noted that Doe's conduct "is not in the interest of the employer nor in furtherance of the business." (App. 771-791, R. DOC. 49, at 14).

The District Court then held that even if it could be reasonably found that Doe's conduct was within the scope of his employment, the claim still failed because there was no material issue of fact that Doe's assault was done as a means for doing work for Advance. (App. 771-791, R. DOC. 49, at 14). "Plaintiff did not provide any evidence that this type of conduct is implicitly permitted or ratified by Advance. (App. 771-791, R. DOC. 49, at 14). The District Court held there was no evidence from which a reasonable juror could find that Advance ratified Doe's conduct noting that an investigation had been conducted and Advance terminated Doe for his conduct. (App. 771-791, R. DOC. 49, at 14).

Because Tashman could not establish both of the elements necessary for a viable vicarious liability claim against an employer for the tortious act of its employee under Missouri law, the claims for assault and intentional infliction of emotional distress against Advance failed. The District Court properly granted Advance summary judgment on these claims.

In his Appeal, Tashman argues that summary judgment on both counts was an error because the District Court applied the wrong standard to determine if Doe's acts were within the scope of his employment.

17

It should be noted that Tashman does not argue the District Court improperly relied on and applied Gibson v. Brewer, 952 S.W.2d 239 (Mo. 1997). Rather, Tashman asks this Court to rely on Restatement (Second) of Agency Sections 229 and 230 as cited in Carter v. Willert Home Products, Inc., 714 S.W.2d 506 (Mo. 1986). As this Court held in Wong v. Minnesota Department of Human Services, 820 F.3d 922, 930 (8th Cir. 2015), "The role of a federal court in reviewing questions of state law is to interpret state law, not fashion it." The United States Supreme Court held in Erie RR. Co. v. Tompkins 304 U.S. 64, 78 (1938) "Except in matters governed by the Federal Constitution or acts of Congress, the law to be applied in any case is the law of the state." *See also* John Doe CS v. Capuchin Franciscan Friars, 520 F.Supp.2d 1124, 1135 (E.D. Mo. 2007).

In Carter, the Court found that where an employee's improper acts are incidental to an authorized employment duty, the act may be in the scope of his or her employment.

The facts in Carter are distinguishable for the case at bar. First, the employee of Willert Home Products Inc. was employed as an employment verifier. Id. at 508. Her job duties included answering the phones and responding to employment verification requests. Id. at 511. It was alleged that employee made untruthful remarks about Plaintiff's credit to a finance company with which Plaintiff had applied for a loan. Id. at 506. The Court held the acts were within the scope of her

18

employment because her job duties included talking to third parties about employment and that is when the alleged untruthful statements were made. Id. As such, employee's job duties specifically included giving information about employees. Unlike the case at bar, her actions did not include an intentional tort such as assault or intentional infliction of emotional distress.

The Carter Court's analysis included a discussion of Restatement (Second) of Agency Section 229 which states that to be within the scope of employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized. The Court noted that Comment (b) explains that

> "An act may be incidental to an authorized act, although considered separately it is an entirely different kind of act. To be incidental, however, it must be one which is subordinate to or pertinent to an act which the servant is employed to perform. It must be within the ultimate objective of the principal and an act which it is not unlikely that such a servant might due."

Id. at 512.

In Carter, the Court also discussed application of Restatement (Second) of Agency Section 230 which states: [a]n act, although forbidden, or done in a forbidden manner, may be within the scope of employment."

In the case at bar, Restatement (Second) of Agency Sections 229 and 230 support affirming the District Court's summary judgment ruling in this case. Doe was employed to *serve* customers and perform battery testing– not to mistreat and assault them. Assaulting Tashman was not in furtherance of any employment duty.

19

Assault was not pertinent to any act of *serving* customers on behalf of Advance. In his brief, Tashman admits that Doe's conduct were not authorized by Advance.

Tashman's position suggests that the simple fact that an individual happens to be working at the time of he commits some personally motivated act, that act is automatically imputable to the employer. That is not the law. Here, Doe was employed to greet customers and provide service to them when they came to the Advance store. While this event may have occurred while Doe was working as a sales representative, the assault was not part of that job description. He was not executing services on behalf of a customer or Advance when he engaged in his behavior. His employment duty was to "provide service." What Doe did was *the opposite* of providing service. His acts were a detriment to Advance and its customers including Tashman.

As the District Court held, "Poor customer services results in diminished customer relationships and thus diminished profits…An employee's tortious action that disrupts this purpose is therefore outside the scope of employment." (App. 771-791, R. DOC. 49, at 16). The District Court relied on Supreme Court case of Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998) in its analysis. As such, Doe's intentional acts could not have part of his employment duties. Thus, the acts of Doe could not be in the scope of his employment.

Appellate Case: 22-1949    Page: 27    Date Filed: 09/16/2022 Entry ID: 5199180

Tashman cites Doyle v. Scott's Cleaning Co., 31 S.W.2d 242 (Mo. App. 1930) to support his argument that Doe's assault on Tashman was part of his job duties. However, the Court of Appeals in Tockstein v. P.J. Hamill Transfer Co., 291 S.W.2d 624 (Mo. App. 1956) instructed that Doyle is no longer to be followed.

"The case of **Doyle v. Scott's Cleaning Co.**, decided by this court, arose out of an assault that the defendant's driver made upon a customer who charged him with being discourteous. We also quoted the Maniaci case as authority in allowing a recovery. The assault in that case took place while the driver was making a delivery to a customer. To this extent only was there any indication that the employee was attempting to advance the employer's interest, and the **Doyle** case should no longer be followed." Id. at 627.

The District Court properly applied the Missouri standard for determining if Advance could be vicariously liable for the intentional torts of Doe. Because Doe was acting outside the scope of his employment duties when he acted against Tashman, there can be no finding of vicarious liability against Advance and thus, the District Court's granting of summary judgment as to the claims of assault and intentional infliction of emotion distress was proper and should be affirmed.

### b. Kevin Doe was not acting within the scope of his employment

Tashman argues that Doe's actions can be imputed to Advance because he was acting within the scope of his employment when the acts occurred. As noted in

the case of <u>Noah v. Ziehl</u>, for vicarious liability to attach, the conduct must be in furtherance of the interests of the employer. <u>Noah v. Ziehl</u>, 759 S.W.2d 905, 910 (Mo. Ct. App. 1988). Tashman also cites <u>Higgenbotham v. Pit Stop Bar & Grill, LLC</u>, 548 S.W.3d 323, 328 (Mo. App. 2018), <u>Haehl v. Wabash Railway Co.</u>, 24 S.W. 737 (Mo. 1893), <u>Wellman v. Pacer Oil</u>., 504 S.W.2d 55 (Mo. 1973), <u>Bass v. Kansas City Journal Post Co.</u>, 148 S.W.2d 548, 551 (Mo. 1941), <u>Bova v. St. Louis Public Service Company</u>, 316 S.W.2d 140, 144 (Mo. Ct. App. 1958), <u>Foster v. Campbell</u>, 196 S.W.2d 147, 150 (Mo. 1946), <u>Linam v. Murphy</u>, 232 S.W.2d 937 (Mo. 1950), <u>P.S. v. Psychiatric Coverage, Ltd</u>. 887 S.W.2d 622, 624 (Mo. Ct. App. 1994), <u>Doe by Doe v. B.P.S. Guard Services, Inc.</u> v. 945 F.2d 1425 (8th Circ. 1991), and <u>Daugherty v. Allee's Sports Bar and Grill</u>, 260 S.W.3d 869 (Mo. App. 2008) for the proposition that if an employee is engaged in the employer's business and is carrying out the employer's purposes, the employer can be held liable under the doctrine of respondeat superior.

This case is distinguishable from <u>Daugherty</u> where a customer was injured after employee bartender served a beer knowing a toothpick was in it. <u>Daugherty</u> at 869. The Court held that a bartender serving a beer to a customer could be considered conduct in furtherance of employer's interest and thus, within the scope of the employment. <u>Id</u>. at 873. Unlike <u>Daugherty</u>, this case involves an intentional tort and there is no evidence that Doe's acts furthered Advance's business.

22

This case is similar to <u>Noah</u> where a bouncer assaulted a customer after customer patted bouncer's girlfriend in the rear. <u>Id</u>. at 910. The Court held the conduct was not committed by virtue of bouncer's employment or in furtherance of the employer's business. <u>Id</u>. at 910. "Whether or not an employee's use of force is within the scope if his employment is dependent upon many factors….Of primary importance are the nature of the principal's business, whether or not the employment will bring the employee into contact with the public and the likelihood that the employment will involve the use of force and whether or not the employee acts from a personal motive. <u>Id</u>. at 911. As in <u>Noah</u>, the acts of Doe were not done in furtherance of Advance's business. As in <u>Noah</u>, this Court should hold that there can be no vicarious liability. *See* <u>id</u>.

This case is distinguishable from <u>Higgenbotham</u> where employee was transporting employer's money for deposit at a bank when he was involved in a car accident and was, therefore, acting within the course and scope of his employment. <u>Higgenbotham</u> at 328. This was a necessary mission by employee for employer. <u>Id</u>. at 329. In this case, Doe was not acting in furtherance of his employer's interests but, as the District Court noted, his acts interfered and harmed the employer's business. Assaulting a customer is not in the furtherance of an employer's business. Unlike a negligence claim, an intentional tort takes an employee out of the court and scope of his employment. *See* <u>Tockstein v. P.J. Hamill Transfer Company</u>, 291

23

S.W.2d 624, (Mo. App. 1956). As such, this Court should find that Doe's actions were not done in the scope of his employment.

In <u>Haehl</u>, the Court held that "If the business of the master is done, or is taking care of itself, and his servant, not being engaged in it, and not concerned about it, but impelled by motives that are wholly personal to himself and simply to gratify his own feeling of resentment….the wrong is the purely personal wrong of the servant, for which he alone is responsible. <u>Id</u>. Here, Doe's actions were purely based on his personal motives and personal anger at Tashman. His assault and treatment of Tashman did not benefit "the business" of Advance. Simply because he was in the store and on the clock at the time of his conduct does not make his actions "within the scope of his employment."

This case is similar to <u>Wellman</u> where the Missouri Supreme Court held that where an employer does not have any knowledge of employee's vicarious propensities, actions of employee were so outrageous and criminal and so excessively violent that, as a matter of law, they were not within the scope of his employment. <u>Id</u>. "The commission of a deadly assault is not a customary way of performing a duty which involves gates being closed. <u>Id</u>. at 59. The Court of Appeals reversed the judgment against employer. <u>Id</u>.

24

As in <u>Wellman</u>, this Court should hold that Doe's assault of Tashman was not a "customary way" of performing his job duty of providing customer service and in fact, was in violation of company policy.

<u>Bass v. Kansas City Journal Post Co</u>. is distinguishable from the case at bar because there, the wrongdoer was not an employee of defendant but an independent contractor. *See* <u>Bass</u> at 551.

<u>Bova v. St. Louis Public Service Company</u> is distinguishable for the case at bar because if <u>Bova</u>, the acts of employee bus driver were directly related to the bus driver keeping the bus schedule. <u>Id</u>. at 140. In <u>Bova</u>, the Court held that a jury could find that the evidence showed that the employee bus driver may have assaulted passenger who was came onto bus to question driver about a collision in order to keep the bus schedule - which would could possibly have been in furtherance of the employer's business of providing bus service. <u>Id</u>. at 144. Here, the actions of Doe actually caused harm to Advance and it cannot be reasonably argued that a sales representative's (whose job duty was to provide customer service) assault against a customer was in furtherance of the employer's business.

This case is distinguishable from <u>Foster</u> which involved possible employee being involved in a car accident while performing personal and business purposes where employee filled business vehicle with gas but also shopping for personal needs. <u>Id</u>. at 354. In <u>Foster</u>, the Court found that employer could be vicariously liable

Appellate Case: 22-1949    Page: 32    Date Filed: 09/16/2022 Entry ID: 5199180

for employee's negligent operation of truck and the Court noted that getting gas could be in the furtherance of the employer's business as is the case here. *See* id. Foster did not involve an intentional tort as in the case here. Additionally, unlike the employee is Foster, the actions of Doe were not in furtherance of Advance's business and actually caused harm. As such, a reasonable juror could not find that Doe's assault or intentional infliction of emotional distress could have been committed in the scope of Doe's employment duties.

Linam is also distinguishable from the case at bar. Linam at 937. In Linam, the Court held that a jury could find that flying instructor could be found to be acting within the scope of his employment in continuing to operate a dual control training plane after ordering Plaintiff, a student pilot, to release the controls. *See* id. His job duties included giving instructions to customers/students in the art of flying at the request of his employers. Id. 1144. The Court noted that although it could be found that pilot's actions could have been for his own amusement, his motive "is not material if he is still engaged in defendants' business and *if* his acts in taking the controls and thereafter operating the plane were part of his duties and within the scope of his employment… So long as the act or omission is done in the performance of the master's business *as well as* 'for fun,' such an act or omission is deemed to be within the scope of employment. Id. at 942. The case at bar is distinguishable because assaulting Tashman was not done in the performance of Advance's

26

business. His act of assaulting Tashman was a personal choice done purely for personal reasons. It was not part of any job duty he was hired to perform on behalf of Advance.

The case at bar is similar to <u>P.S. and R.S. v. Psychiatric Coverage</u>, 887 S.W.2d 622 (Mo. App. 1994), where the Missouri Court of Appeals found that employer was not liable under respondeat superior for damages resulting from psychologist's sexual relations with patient since psychologist was not acting within scope and course of employment as therapist. <u>Id</u>. There, the sexual encounters occurred at the employer's clinic. <u>Id</u>. Employee therapist was hired to provide therapy to patients at the employer's clinic. <u>Id</u>. at 625.

The Court held that despite these events occurring at work and based on a relationship that began as part of his duties related to therapy for patients, the sexual counters were based on purely personal desires. <u>Id</u>. The acts were not intended to further employer's business. <u>Id</u>.

As in <u>Psychiatric Coverage</u>, this Court should find that because Doe's behavior was based purely personal feelings against Tashman, they were not intended to further Advance's business. As such, vicarious liability cannot be imputed to Advance for the intentional torts of Doe. *See* <u>id</u>.

Based on Missouri law, Tashman has failed to establish any material issue of fact that Doe was *<u>not</u>* acting within the scope of his employment when he chose to

Appellate Case: 22-1949    Page: 34    Date Filed: 09/16/2022 Entry ID: 5199180

assault and/or cause intentional emotional distress to Tashman. As such, Advance cannot, as a matter of law, be found vicariously liable for Doe's unexpected and unforeseeable conduct.

### c. Imposing respondeat superior liability would violate public policy and Missouri law

Tashman argues that public policy dictates the imposition of vicarious liability on Advance for Doe's intentional torts suggesting that holding Advance liable would serve the purpose of safety to third persons and not allowing an employer to turn its business over to dangerous agents citing Maniaci v. Interurban Express Co., 266 Mo. 633 (Mo. 1916). In Maniaci, a customer was called to employer's office by employee for payment related to delivery of some fruit. Id. In essence, he was collecting the employer's debt - a direct benefit to the employer. Id. During this meeting, employee shot the customer. The Court held that the employer could be held liable for the crime of the employee. Id.

However, this reliance on Maniaci is misplaced. Maniaci has essentially been disregarded as a reliable case to establish employer vicarious liability for the intentional tortious acts of an employee. Tockstein v. P.J. Hamill Transfer Company, 291 S.W.2d 624 (Mo. App. 1956).

In Tockstein, Plaintiff sued employer after its employee driver struck him in the face while delivering merchandise to Plaintiff. Id. The facts indicted employee driver became angered with Plaintiff because of a prior experience with plaintiff.

28

Id. The Court of Appeals held that the assault was not designed to further the employer's business. Id. Plaintiff relied on Maniaci to support his argument that the employer should be liable for the assault under the doctrine of respondeat superior. Id.

The Tockstein Court held Maniaci was unpersuasive and essentially, not a good guide in cases where the Court's evaluate employer vicarious liability for the intentional torts of an employee. Id. The Tockstein Court stated: "Maniaci v. Interurban Express Co. arose out of the wrongful shooting of the consignee of some fruit in an attempt by the employee of the defendant to make the consignee sign a receipt for the fruit. *This case affords us no guide as to the law*, for it was a four to three decision by the Supreme Court en banc and two of the judges concurring gave their concurrence in the result only. The facts, however, show that at the time of the shooting the employee was attempting to force the consignee to do an act for the benefit of the employer." Id. at 626-627 (emphasis added).

This case is analogous to Tockstein because Doe's actions were not in furtherance of the business of Advance. As noted in Tockstein, the 1916 case of Maniaci does not provide sufficient guidance on these issues. *See* id. As in Tockstein, this Court should find that Advance cannot be held liable for Doe's intentional torts against Tashman. *See* id.

29

While it is true that Doe's behavior occurred during work hours and in Advance's store, Doe's job duties did not include assaulting or yelling at customers. Doe's job duties included providing professional customer service.

Providing customer service is the opposite of harming, offending or threatening customers. No reasonable person would find that an assault could possibly be part of, incidental or related to the job duties of an employee who is hired to serve and assist customers with its products. While Advance did entrust Doe to interact with customers in a professional manner, Doe's behavior was not so. It was disruptive, harmful and not in advance of the employer's business.

For these reasons, and in accordance with <u>Tockstein</u>, public policy does not dictate that this Court find Advance vicariously liable for the intentional torts committed by Doe. The District Court order granting summary judgment as to Counts II and III of Tashman's Complaint was proper and should be affirmed.

### III. Tashman Failed to Raise a Genuine Issue of Material Fact that Advance Auto Parts, Inc. Ratified Kevin Does' Conduct

In this case, Advance conducted an investigation into Tashman's complaints. Once the investigation was complete, Doe was fired on November 12, 2019, less than two months after the incident.

The District Court rejected Tashman's argument that by waiting two months to terminate Doe (despite thorough investigation) amounted to ratification of Doe's conduct towards Tashman. "In fact, Defendant conducted an investigation against

Doe and found that he violated company policy, which was the basis for the recommendation to terminate and ultimately, termination." (App. 771-791, R. DOC. 49, at 15).

Tashman asks this Court to consider the alternative of ratification to impose liability on Advance. "Under Missouri law, ratification is an express or implied adoption or confirmation by one person, with knowledge of all material matters, of an act performed on [their] behalf by another who lacked the authority to do so." Newman v. Schiff, 778 F.2d 460, 467 (8th Cir. 1985) (citing Hyken v. Travelers Ins. Co., 678 S.W.2d 454, 459 (Mo. Ct. App. 1984)).

Tashman argues that waiting two months to terminate Doe amounted to "ratification" of Doe's assault on Tashman. No case has imposed a time limit on the length of time to terminate employment in such cases. Tashman asks this Court to adopt a rule that a two-month time-frame to complete an investigation and terminate an employee amounts to "ratification" of an employee's improper conduct. No case law supports this suggested arbitrary and rigid timeframe.

Tashman cites Egnatic v Ngygen, 113 S.W.3d 659 (Mo. Ct. App. 2003) in an attempt to support this argument. First, it should be noted that Egnatic applied Kansas law to this issue and thus is not binding in this matter. Id. Second, it should be noted that in Egnatic, the Court found that employer Allstate did not ratify the agent's altering the terms of Plaintiff's automobile policy. Id.

31

The Court held: "Once a principal receives notice of an unauthorized act performed by an agent, the principal must immediately repudiate the agent's action or it is presumed that the principal ratified the act….Allstate was unaware of Ms. Ward's representations to Ms. Beasley…Because Allstate was unaware of Ms. Ward's representations to Ms. Egnatic ….its cashing Ms. Egnatic's premium check was not a ratification." Id. at 676.

The Court in Egnatic does not define "immediately" and it does not set a deadline for when a termination or repudiation must occur for it to be non-ratification. *See* id.

Tashman also cites Sooter v. Magic Lantern, Inc., 771 S.W.2d 359, 363 (Mo. App. 1989) for the proposition that failure to repudiate an improper act by an agent after learning of it, amounts to ratification by the employer. In Sooter, the Court stated the principle as follows: "Acquiescence by the principal in a series of acts by the agent indicates authorization to perform similar acts in the future….Even an unauthorized act of an agent may be affirmed by a principal who fails to repudiate the act after learning of it." Id. However, in the case at bar, the acts of Doe were repudiated as shown by his termination. As such, Sooter is inapplicable. *See* id.

Tashman also relies on Siguenza-Chavez v. Double Check Company, Inc., 4:19-CV-00769-BCW, 2021 WL 5103922 (W.D. Mo. July 13, 2013) to suggest

Appellate Case: 22-1949    Page: 39    Date Filed: 09/16/2022 Entry ID: 5199180

that Advance ratified Doe's assault by waiting to terminate him until after an investigation and only two months after the incident. However, this case is distinguishable from <u>Siguenza-Chavez</u> where the employee accused of wrongful conduct was never terminated, disciplined or suspended. *See* <u>id</u>. The case at bar is wholly distinguishable because Doe was terminated for the acts committed against Tashman. Siguenza-Chavez cannot be relied on to hold that Advance ratified the conduct of Tashman. *See* <u>id</u>.

This case is also distinguishable from <u>Compton v. Vaughan</u>, 222 S.W.2d 81 (Mo. 1949) where the Court held that a real estate firm ratified an improper payment related to a loan accepted by its agent because the evidence showed the firm knew about the improper payment and continued to have the agent work on the loan. Agent was never disciplined or fired and the money was never returned. <u>Id</u>. <u>Compton</u> is not a comparable case because in this case an investigation was conducted and Doe was terminated for his conduct. While the Court found that the employer in <u>Compton</u> ratified the acceptance of the improper funds, here the acts of Doe were repudiated as evidenced by his termination.

<u>Long's Marine, Inc. v. Boyland</u>, 899 S.W.2d 945 (Mo. Ct. App. 1995) is also distinguishable. In <u>Long</u>, a boat dealership in financial trouble, entered into a contract with buyer Sharp Inland Marina, Inc. <u>Id</u>. On April 21, 1989, Long entered into an agreement through Sharp's agents to exchange Long's assets for 100 shares

of Sharp stock. Id. The contract was signed on April 21, 1989. Id. Sharp allowed Long to use Sharp facilities to sell some of his remaining inventory. Id. The arrangement began on April 21, 1989 and did not end until a fire destroyed the facilities in October 1989. Id. The Court found that "An individual who acquiesces for a considerable amount of time after entering into a contract and accepts its benefit is deemed to have ratified it. Id. at 947.

In Long, employer Sharp knew about its agents' arrangement with Long for at least six months. Id. Long is distinguishable from the case here because Long was not based on the employee's intentional tort of assault or intentional emotional distress. See id. Additionally, in Long, the employer knew about the arrangement for **six months** and did not reject it. It was only after a fire that the arrangement ended. In the case at bar, Advance took affirmative action against Doe and terminated Doe after an investigation and just two months after the incident.

There is no issue of material fact that Advance terminated Doe after it investigated the complaints of Tashman. Tashman attempts to get around this argument by essentially asking this Court to adopt a hardline rule that an employer who waits two months to terminate an employee for misconduct despite conducting a thorough investigation is not supported by Missouri law. It would also be bad public policy. Courts should encourage thorough investigations of employees prior to discipline – particularly termination.

34

The argument that Advance ratified the behavior of Doe is not based on the evidence. The District Court properly found that Advance took appropriate action by terminating Doe and thus, did not ratify the conduct of Doe. As such, summary judgment as to Counts II and III of the Complaint was proper and should be affirmed by this Court.

Appellate Case: 22-1949    Page: 42    Date Filed: 09/16/2022 Entry ID: 5199180

## CONCLUSION

Based on the foregoing, Defendant-Appellee Advance Auto Parts, Inc. respectfully requests that this Court affirm the District Court's Judgment as to Counts I, II and III.

Dated this 15th day of September, 2022.

Respectfully submitted,

/s/ Brian K. McBrearty
Brian K. McBrearty, #36143MO
Lori A. Schmidt, #45561MO
Litchfield Cavo LLP
222 South Central Avenue,
Suite 110
St. Louis, Missouri 63105
(314) 725-1227 - Phone
(314) 724-3006 - Facsimile
mcbreartyb@litchfieldcavo.com
schmidt@litchfieldcavo.com
**Attorneys for Defendant, Advance Auto Parts, Inc.**

36

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) this document contains 8,054 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in proportionally spaced typeface using Microsoft Word 2016 in 14-Point Times New Roman font.

Pursuant to Eighth Circuit Local Rule 28A(h)(2), this brief has been scanned for viruses and is virus-free.

/s/Lori Ann Schmidt
Lori Ann Schmidt
Attorney for Defendant-Appellee
Advance Auto Parts, Inc.
Dated: September 15, 2022

Appellate Case: 22-1949    Page: 44    Date Filed: 09/16/2022 Entry ID: 5199180

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals of the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/Lori Ann Schmidt
Lori Ann Schmidt
Attorney for Defendant-Appellee
Advance Auto Parts, Inc.
Dated: September 15, 2022

Appellate Case: 22-1949     Page: 45     Date Filed: 09/16/2022 Entry ID: 5199180