No. 22-1949

# In The United States Court Of Appeals For The Eighth Circuit

NICOLAS TASHMAN,

*Plaintiff-Appellant,*

v.

ADVANCE AUTO PARTS, INC.,

*Defendant-Appellee.*

On Appeal from the United States District Court for the
Eastern District of Missouri, Case No. 20-00943
The Honorable Henry Edward Autrey, Judge

## REPLY BRIEF OF PLAINTIFF-APPELLANT NICOLAS TASHMAN

Mark S. Schuver, #34713
Natalie T. Lorenz, #65566
Montana L. Sinn, #74225
MATHIS, MARIFIAN & RICHTER, LTD.
23 Public Square, Suite 300
P.O. Box 307
Belleville, IL 62220
(618) 234-9800

*Attorneys for Plaintiff-Appellant*
*Nicolas Tashman*

{M1177918.1}

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS..........................................................................ii
TABLE OF AUTHORITIES .............................................................. iii
INTRODUCTION ............................................................................1
ARGUMENT ...................................................................................14

I.      GREEN DOES NOT REQUIRE DEFENDANT'S KNOWLEDGE OF ANEMPLOYEE'S PAST DISCRIMINATORY CONDUCT, AND INSTEAD SUPPORTS IMPOSING LIABILITY "FOR THE ACTIONS OF ITS NONSUPERVISORY EMPLOYEES WHEN THEY ARE ACTING WITHIN THE SCOPE OF THEIR DUTIES .................................................14

II.     PLAINTIFF RAISED A GENUINE ISSUE OF MATERIAL FACT UNDER COUNTS I, II AND III THAT DOE ACTED WITHIN THE SCOPE OF HIS EMPLOYMENT........................................................................20

      A.    Doe's Actions Were *Incidental* to Conduct Authorized by AAP .......21
      B.    Doe's Actions Were Undertaken in Part to Further AAP's Business Interests.........................................................................25
      C.    Public Policy Dictates the Imposition of *Respondeat Superior* Liability .............................................................................30

III.    AAP RATIFIED DOE'S ASSAULT WHEN IT FAILED TO IMMEDIATELY REPUDIATE DOE'S ACTIONS AND THEN AFFIRMATIVELY RATIFIED THEM ...................................................33

CONCLUSION...............................................................................38
CERTIFICATE OF COMPLIANCE.......................................................40
CERTIFICATE OF SERVICE .............................................................41

Appellate Case: 22-1949    Page: 2    Date Filed: 10/27/2022 Entry ID: 5212336

# TABLE OF AUTHORITIES

Page

**Cases**

*Arguello v. Conoco, Inc.*,
207 F. 3d 803 (5th Cir. 2000) ...........................................................4, 5

*Carter v. Willert Home Prod., Inc.*,
714 S.W.2d 506 (Mo. 1986) .....................................................6, 7, 8, 13

*Daugherty v. Allee's Sports Bar & Grill*,
260 S.W.3d 869 (Mo. Ct. App. 2008)...........................................7, 9, 13

*Doe by Doe v. B.P.S. Guard Servs., Inc.*,
945 F.2d 1422 (8th Cir. 1991) .........................................................7, 12

*Doyle v. Scott's Cleaning Co.*,
31 S.W.2d 242 (Mo. Ct. App. 1930)......................................................9

*Foster v. Campbell*,
196 S.W.2d 147 (Mo. 1946) ...............................................................12

*Gibson v. Brewer*,
952 S.W.2d 239 (Mo. 1997). .................................................................6

*Green v. Dillard's, Inc.*,
483 F.3d 533 (8th Cir. 2007) .......................................................3, 4, 5

*Haehl v. Wabash Railway Co.*,
24 S.W. 737 (Mo. 1893) ......................................................................13

*Higgenbotham v. Pit Stop Bar & Grill, LLC*,
548 S.W.3d 323 (Mo. Ct. App. 2018).........................................6, 12, 13

*Linam v. Murphy*,
232 S.W.2d 937 (Mo. 1950) ................................................................12

*Long's Marine, Inc. v. Boyland*,
899 S.W.2d 945 (Mo. Ct. App. 1995).................................................22

Appellate Case: 22-1949     Page: 3     Date Filed: 10/27/2022 Entry ID: 5212336

*Maniaci v. Interurban Express Co.*,
182 S.W. 981 (Mo. 1916) .......................................................................17

*Noah v. Ziehl*,
759 S.W.2d 905 (Mo. Ct. App. 1988)..........................................6, 15, 18

*O'Laughlin v. Holder*,
No. 4:21-CV-01117-JAR, 2022 WL 103318 (E.D. Mo. Jan. 11, 2022) ..................8

*P.S. v. Psychiatric Coverage, Ltd.*,
887 S.W.2d 622 (Mo. Ct. App. 1994)..........................................6, 15, 16

*Ragsdale v. Riverside Jockey Club*,
106 S.W.2d 948 (Mo. Ct. App. 1937)....................................................13

*Simmons v. Kroger Grocery & Baking Co.*,
104 S.W.2d 360 (Mo. 1937) .............................................................13

*State ex rel. City of Kansas City v. Harrell*,
575 S.W.3d 489 (Mo. Ct. App. 2019).....................................................8

*Tockstein v. P.J. Hamill Transfer Co.*,
291 S.W.2d 624 (Mo. Ct. App. 1956)................................... 3, 9, 10, 11, 12, 13, 17

*Wagstaff v. City of Maplewood*,
615 S.W.3d 608 (Mo. Ct. App. 1981).....................................................6

*Wellman v. Pacer Oil Co.*,
504 S.W.2d 55 (Mo. 1973) ...........................................................12, 14

*Whiteaker v. Chicago, Rock Island & P. Ry. Co.*,
160 S.W. 1009 (Mo. 1913) .............................................................13

## **Statutes**

42 U.S.C. § 1981 .......................................................................3, 4

Appellate Case: 22-1949    Page: 4    Date Filed: 10/27/2022 Entry ID: 5212336

## Other Authorities

Black's Law Dictionary (11th ed. 2019) ...................................................................22

Missouri Code of State Regulations, 20 CSR 2235-5.030(6)(B) ...........................16

Restatement (Second) of Agency § 219 ...................................................................5

Restatement (Second) of Agency § 230 ...................................................................8

Restatement (Second) of Agency § 236 .................................................................12

Restatement (Second) of Agency § 245 .................................................................18

Appellate Case: 22-1949     Page: 5     Date Filed: 10/27/2022 Entry ID: 5212336

# INTRODUCTION

Defendant, Advance Auto Parts, Inc. ("AAP"), disingenuously attempts to persuade this Court that it should not be held liable for the conduct of its employee, Kevin Doe ("Doe"), by misrepresenting and conveniently omitting critical facts of record.

By way of example, and not limitation, AAP's Brief wholly ignores the undisputed fact that Doe racially profiled Tashman as being Muslim or of Middle Eastern descent by mistakenly associating him as being married to an unrelated woman who wore religious head gear. App. 374-375; R. Doc. 34-3, at 8-9. AAP admits that, unprovoked by Tashman, Doe began shouting "derogatory and racist statements at Tashman." App. 280, R. Doc. 29-2, at 2, at ¶13. However, AAP completely omits any reference to its own recorded phone conversation wherein, within three (3) to five (5) minutes of the incident, Tashman reported the details of Doe's racist attack to AAP's corporate office. App. 357-366; R. Doc. 34-2. AAP similarly avoids any reference whatsoever to the fact that, after confirming Doe's threats with the store manager, the incident was reported that same day to AAP's District Manager, Dante Maranan ("Maranan") who, with full knowledge of the incident: (1) failed to undertake an investigation, (2) failed to prepare a written report documenting the incident as required by company policy, (3) failed to disclose the incident to his superiors, and (4) informed Doe that he would <u>not</u> be fired. App. 411;

Appellate Case: 22-1949    Page: 6    Date Filed: 10/27/2022 Entry ID: 5212336

R. Doc. 34-4, at 8; App. 412-413; R. Doc. 34-4, at 9-10; App. 383-384; R. Doc. 34-3, at 17-18; App. 470-471; R. Doc. 34-6, at 13-14; App. 479-560; R. Doc. 34-6, at 22-103; App. 524, 526-527; R. Doc. 34-6, at 67, 69-70, App. 478, R. Doc. 34-6, at 21; App. 429, 434, 435, 527, 631; R. Doc. 34-4, at 26, 31-32; R. Doc. 34-6, at 70; R. Doc. 34-9, at 11.

Instead of acknowledging these facts, AAP would have this Court believe that its first notice of Doe's misconduct was when Louis Hogan ("Hogan"), AAP's Senior Human Resources Manager for the Midwest Region, received a call from one of AAP's attorneys on November 1, 2019, informing him of a letter from Tashman's counsel. App. 462-463, 467-468, 471; R. Doc. 34-6, at 5-6, 10-11, 14. AAP fails to acknowledge the fact that, during the intervening six (6) weeks, no less than three (3) levels of AAP's corporate structure (store manager, district manager and corporate office) *knew* of Doe's wrongful conduct as of the day it occurred, and yet did *nothing* to address his conduct until Plaintiff's counsel threatened legal action. App. 470-471; R. Doc. 34-6, at 13-14; App. 479-560; R. Doc. 34-6, at 22-103; App. 524, 526-527; R. Doc. 34-6, at 67, 69-70, App. 478, R. Doc. 34-6, at 21; App. 429, 434, 435, 527, 631; R. Doc. 34-4, at 26, 31-32; R. Doc. 34-6, at 70; R. Doc. 34-9, at 11. As a result of AAP's failure to take any action whatsoever (other than to tell Doe that he would <u>not</u> be fired), Doe and others at AAP were left with the belief that

AAP had condoned Doe's conduct. App. 396, 400, 454-457; R. Doc. 34-3, at 30-34; R. Doc. 34-5; App. 462-463, 467-468, 471; R. Doc. 34-6, at 5-6, 10-11, 14.

Of course, none of these facts are addressed or discussed in AAP's Brief. AAP's argument that it acted in a timely manner because Hogan belatedly investigated and recommended Doe's termination upon finally learning of his wrongful acts ignores AAP's systemic attempts to sweep its ratification of Doe's conduct under the rug.

In addition to omitting critical facts, AAP has patently misstated the law, particularly with respect to two key cases: *Green v. Dillard's*, 483 F.3d 533, 541 (8th Cir. 2007), and *Tockstein v. P.J. Hamill Transfer Co.*, 291 S.W.2d 624 (Mo. Ct. App. 1956). AAP first erroneously contends that *Green* limits retail employer liability under § 1981 to only those cases in which the employer *knew* of its employee's racist propensities. However, no such holding is found anywhere in *Green*. Defendant further contends that *Tockstein* effectively eliminates employer liability for their employees' intentional torts. No such holding is found anywhere in *Tockstein*. As set forth herein, AAP's contentions are inaccurate and are contradicted by a plain reading of both *Green* and *Tockstein*.

Plaintiff respectfully submits that this Court should reverse the judgments below as to Counts I, II and III and remand this case to the district court for further proceedings.

**ARGUMENT**

I.   *GREEN* **DOES NOT REQUIRE DEFENDANT'S KNOWLEDGE OF AN EMPLOYEE'S PAST DISCRIMINATORY CONDUCT, BUT INSTEAD SUPPORTS IMPOSING LIABILITY "FOR THE ACTIONS OF ITS NONSUPERVISORY EMPLOYEES WHEN THEY ARE ACTING WITHIN THE SCOPE OF THEIR DUTIES."**

AAP misrepresents this Court's holding in *Green v. Dillards, Inc.,* 483 F.3d 533, 541 (8th Cir. 2007), when it argues that knowledge of an employee's prior discriminatory conduct or propensities is required to hold an employer liable under 42 U.S.C. § 1981. A plain reading of *Green* supports the opposite conclusion.

This Court in *Green* held that, *under the specific facts of that case,* there existed evidence of the employee's prior discriminatory conduct or propensities sufficient to hold the employer liable. Contrary to AAP's argument, however, *Green* did <u>not</u> preclude other theories of vicarious liability. It merely applied one such theory based on the specific facts before it. In fact, *Green* favorably cited a number of cases holding retail employers liable for their employees' conduct under *multiple* theories of vicarious liability. In rejecting the defendant's argument that vicarious liability is not permissible under § 1981, *Green* held that "[s]imilar arguments have been rejected elsewhere," and cited a long list of such cases from other circuits, stating that they were "*worthy of note*." *See Green,* 484 F.3d at 540.

One such case favorably cited by *Green* was the Fifth Circuit's decision in *Arguello v. Conoco, Inc*., 207 F.3d 803, 810 (5th Cir. 2000). Therein, the court held

that a retailer may be found liable for the acts of its employee *without* prior knowledge of its employee's bad acts or propensities. Indeed, *Green* specifically referenced *Arguello's* standard in support of *Green's* holding that a retail employer may be held liable for an employee's misconduct. 483 F.3d at 540.

In its Brief, AAP makes the unfounded assertion that "[a] clear reading of *Green* establishes the 8th Circuit thoughtfully rejected the *Arguello's* standard for imputing liability to an employer and adopted a 'notice' standard." Appellee's Brief at p. 14. No such rejection is stated anywhere in *Green*. In fact, nowhere in *Green* did this Court state or imply that *Arguello* was bad law or that it should not be followed or was "rejected." The mere fact that *Green* applied a different standard based upon the specific facts before it did not, as AAP now contends, constitute a rejection of other methods or preclude the application of other standards – especially in light of the fact that *Green* went out of its way to state that *Arguello* and the other cases were "*worthy of note*."

Based on the facts of *this* case, application of other favorably recognized agency law principles is appropriate, including § 219 of the Restatement (Second) of Agency, which is a well-recognized principle of law in Missouri. Section 219 imposes vicarious liability on an employer *without* evidence that the employer knew or should have known of its employee's racially hostile propensities. Instead, § 219 holds employers liable based upon whether the employee was acting within the

course and scope of employment. As set forth in Plaintiff's Brief and this Reply, there exists a genuine issue of material fact that Doe acted within the course and scope of his employment, and that AAP additionally ratified Doe's actions, thereby precluding summary judgment.

## II. PLAINTIFF RAISED A GENUINE ISSUE OF MATERIAL FACT UNDER COUNTS I, II AND III THAT DOE ACTED WITHIN THE SCOPE OF HIS EMPLOYMENT.

### A. Doe's Actions Were *Incidental* to Conduct Authorized by AAP.

Both parties acknowledge that an employer-defendant's liability is premised on the doctrine of *respondeat superior*, under which a master is liable for the torts of his servant. *Carter v. Willert Home Products, Inc.,* 714 S.W.2d 506, 511 (Mo. 1986) (quoting *Wagstaff v. City of Maplewood,* 615 S.W.3d 608, 610 (Mo. Ct. App. 1981); *Gibson v. Brewer,* 952 S.W.2d 239 (Mo. 1997). *Gibson* further requires the act to have been "done as a means or for the purpose of doing work assigned by the principal." *Gibson,* 952 S.W.2d at 245-46. In other words, the act must be in furtherance of the business or interest of the employer. *Higgenbotham v. Pit Stop Bar & Grill, LLC,* 548 S.W.3d 323, 328 (Mo. Ct. App. 2018); *Noah v. Ziehl,* 759 S.W.2d 905, 910 (Mo. Ct. App. 1988); *P.S. v. Psychiatric Coverage, Ltd.,* 887 S.W.2d 622, 624 (Mo. Ct. App. 1994).

AAP attempts to convince this Court that any time an employee does something wrong it *a fortiori* must be outside the scope of employment because an

employer can never benefit from an employee's wrongful acts. This constricted definition of the scope of employment has been flatly rejected by both federal and state courts. *See, e.g.*, *Doe by Doe v. B.P.S. Guard Servs., Inc.,* 945 F.2d 1422, 1425 (8th Cir. 1991) (security guards acted within scope of employment when surreptitiously videotaping fashion models changing clothes); *Daugherty v. Allee's Sports Bar & Grill*, 260 S.W.3d 869, 873 (Mo. Ct. App. 2008) (bartender's practical joke of sticking toothpick in patron's beer was within scope of employment).

AAP similarly argues that Doe's actions were not within the scope of his employment because making derogatory and racist statements to customers was not included in his job description and violated company policy. However, interacting with customers, assisting them with battery testing and providing them with services *were* within Doe's job description. Doe's choice of words in carrying out those tasks (*"Put your damn name and number on that paper," "Go back to your damn country, go to your camel country,"* etc.) were <u>incidental</u> to those job duties. An act is within the scope of employment even though the act *itself* may not be authorized, if it is nonetheless *incidental* to conduct that *is* authorized. *Carter*, 714 S.W.2d at 512 (defendant held liable when human resources employee made defamatory statements against another former employee while responding to employment verification request).

It should go without saying that the mere fact that an act is against company policy does not relieve an employer from liability. If that were the case, every employer would simply enact company policies broadly prohibiting all wrongful conduct. However, an act, although forbidden, or done in a forbidden manner, may nonetheless be within the scope of employment. Restatement (Second) of Agency, § 230. In *Carter*, for example, the employer's human resources personnel was not authorized to lie about a co-worker's financial information. Nonetheless, the court found that her actions were *incidental* to her authorized duty of providing information about an employee and thus was within the scope of her employment. *Carter*, 714 S.W.2d at 512.

AAP attempts to distinguish *Carter* by claiming that, unlike Plaintiff's claims of assault and intentional infliction of emotional distress in this case, the employee's actions in *Carter* did not include an intentional tort. AAP is mistaken. Defamation <u>is</u> an intentional tort. *See State ex rel. City of Kansas City v. Harrell*, 575 S.W.3d 489, 492 (Mo. Ct. App. 2019), *O'Laughlin v. Holder*, No. 4:21-CV-01117-JAR, 2022 WL 103318, at *5 (E.D. Mo. Jan. 11, 2022), *appeal dismissed*, No. 22-1484, 2022 WL 4015716 (8th Cir. May 4, 2022). AAP's attempt to distinguish *Carter* on that ground must fail.

AAP further attempts to distinguish *Carter* by asserting that *Carter* did not involve the threat of physical harm. This is a distinction without consequence. In

*Daugherty*, a bartender caused physical harm to a patron by putting a toothpick in the patron's beer. *Daugherty*, 260 S.W.3d at 873. The court held that this act of physical harm was nonetheless within the scope of employment. *Id.* Here, Doe threatened and, but for the heroic efforts of co-workers in restraining him, attempted to cause Tashman physical harm while performing an act that he was authorized to do (interacting with a customer while testing a battery). Surely if the employer in *Daugherty* can be held liable for its employee who actually caused physical harm, AAP can be held liable for Doe's threats and attempts to do so.

Finally, AAP relies upon *Tockstein v. P.J. Hamill Transfer Co.*, 291 S.W.2d 624 (Mo. Ct. App. 1956), for the proposition that a case cited by Plaintiff, *Doyle v. Scott's Cleaning Co.*, 31 S.W.2d 242, 245 (Mo. Ct. App. 1930), should no longer be followed. However, *Tockstein* is an "unpublished" or "not for publication" decision that merely criticized *Doyle*, and *Doyle* remains good law to this date. Furthermore, *Tockstein's* criticism of *Doyle* is of no consequence with respect to the facts of *this case*. *Tockstein* merely concluded that the specific <u>facts</u> of *Doyle* would no longer be deemed sufficient to indicate that the employee was advancing the employer's interest at the time of the assault. However, *Tockstein* in no way held that the <u>law</u> which Plaintiff cites and relies upon from *Doyle* should not be followed. To the contrary, *Tockstein* continued to favorably cite other cases holding employers liable for assaults committed by their employees (*see* Section II.B, *infra*).

Appellate Case: 22-1949     Page: 14     Date Filed: 10/27/2022 Entry ID: 5212336

Indeed, *Tockstein* highlights the distinction which AAP fails to recognize. In reviewing those cases where employers were found liable for assaults committed by their employees, *Tockstein* noted that the employees were in the course of performing a task authorized by the employer when the assaults were initiated. The same is true of Doe's actions herein. The undisputed facts are that Doe and Tashman walked to the battery testing counter where Doe threw a piece of paper and a pen on Tashman's battery and told him: *"Put your damn name and number on that paper."* App. 340, 341, 343, 378; R. Doc. 34-1, at 16, 17, 19; R. Doc. 34-3, at 12. Tashman replied *"Excuse me,"* and Doe responded by yelling: *"Go back to your damn country, go to your camel country,"* and then "continued to shout derogatory and racist statements at Tashman." App. 341; R. Doc. 34-1, at 17; App. 280, R. Doc. 29-2, at 2, at ¶13. Tashman never threatened Doe, never exhibited anger towards him and never became physical towards Doe in any way. App. 610-611; R. Doc. 34-8, at 21-22; App. 381; R. Doc. 34-3, at 15.

There can be no dispute that Doe's conduct was initiated by an act authorized by AAP - - requesting a customer to put their name and phone number on a piece of paper as part of the battery testing process. Doe's harsh words, *"Put your damn name and number on that paper,"* were clearly said in furtherance of AAP's interests. As stated in *Tockstein*: "That purpose continued as the only apparent actuating cause of [Doe's] actions throughout the episode." 291 S.W.2d at 627.

In *Tockstein*, the court found no liability because the court determined that at the time of the assault "the master's business was done." 291 S.W.2d at 627. Not so here. The attack by Doe was initiated as part of the process of performing battery testing and the continued attack was actuated by that purpose and no other, with no intervening event.

Finally, it is important to note that *Tockstein* was decided following a jury verdict in favor of the plaintiff, and not on summary judgment. The *Tockstein* court stated that "whether or not the act was one designed to further the employer's business is a jury question," and that a verdict should not be directed for the defendant unless there is no evidence upon which a jury may find that the assault was made for that purpose. *Id*. at 628. Ample evidence exists in this case satisfying this standard. Consequently, the District Court erred in granting summary judgment, and erred in failing to consider acts *incidental* to Doe's job duties when determining whether his conduct fell within the scope of employment.

## B. Doe's Actions Were Undertaken *in Part* to Further AAP's Business Interests.

AAP contends that "Doe's actions were purely based on his personal motives and personal anger at Tashman." Appellee's Brief at p. 24. However, the record is devoid of any prior interaction between Tashman and Doe outside of Doe's authorized job duties with AAP. This is not a case where two individuals brought a

Appellate Case: 22-1949     Page: 16     Date Filed: 10/27/2022 Entry ID: 5212336

purely personal dispute occurring outside of work into the workplace. Even so, a servant may act within the scope of his employment even though pursuing his own ends, if he is at the same time doing his master's business. *B.P.S. Guard Servs.,* 945 F.2d at 1425. Section 236 of the Restatement (Second) of Agency states that "[c]onduct may be within the scope of employment, although done *in part* to serve the purposes of the servant…." (Emphasis added). Indeed, even if the servant's *predominant* motive is to benefit himself, *respondeat superior* will nonetheless apply so long as "the master's business actuates the servant to *any* appreciable extent." *Id.* at *cmt. b. (emphasis added).*

In *Linam v. Murphy,* 232 S.W.2d 937 (Mo. 1950), the Missouri Supreme Court found that a pilot was acting within the scope of employment when he took control of a plane *in part* for his own enjoyment, holding that if the conduct is for the "master's business *as well as* 'for fun,' such act or omission is deemed to be within the scope of employment." *Id.* at 942. AAP attempts to distinguish *Linam* by arguing that Doe's assault was undertaken for a *purely* personal reason – simply because it was an assault. However, the law is clear that assaults (and other intentional torts) may be carried out within the scope of employment, as long as they were actuated, at least in part, by the employer's business.

AAP cites to *Tockstein*, 291 S.W.2d 624, *Wellman v. Pacer Oil*, 504 S.W.2d 55 (Mo. 1973), *Foster v. Campbell*, 196 S.W.2d 147 (Mo. 1946), *Higgenbotham,*

548 S.W.3d 323, *Carter*, 714 S.W.2d 506, and *Daugherty,* 260 S.W.3d 869, for the proposition that there exists some sort of assault or intentional tort exception to *respondeat superior*. ("[a]n intentional tort takes an employee out of the court [sic] and scope of his employment"). Appellee's Brief at p. 23. No such exception exists under the law.

None of the cases cited by AAP state that employers are immune from liability for the intentional torts of their employees. In fact, *Tockstein* cited a number of cases holding the contrary. *See, e.g., Haehl v. Wabash R. Co.,* 24 S.W. 737 (Mo. 1893) (employer liable when employee shot trespasser)*; Whiteaker v. Chicago, Rock Island & P. Ry. Co.,* 160 S.W. 1009 (Mo. 1913) (employer liable when employee kicked trespasser from top of rail car); *Simmons v. Kroger Grocery & Baking Co.,* 104 S.W.2d 360 (Mo. 1937) (employer liable when employee assaulted boy who marked up store windows); *Ragsdale v. Riverside Jockey Club,* 106 S.W.2d 948 (Mo. Ct. App. 1937) (employer liable when employee assaulted customer in process of asking for refund). In addition, at least two of the cases cited by AAP for the proposition that intentional torts are not actionable against employers *do* in fact find liability for intentional torts. *See Carter*, 714 S.W.2d 506 (employer liable for defamation) and *Daugherty*, 260 S.W.3d 869 (employer liable for bartender sticking toothpick in patron's beer).

Appellate Case: 22-1949     Page: 18     Date Filed: 10/27/2022 Entry ID: 5212336

AAP places special reliance on *Wellman*, 504 S.W.2d 55, arguing that outrageous, criminal, and excessively violent acts are, as a matter of law, outside the scope of employment. However, the facts of *Wellman* could not be more distinguishable. In that case, plaintiff and his family stopped for gas and got into an argument with the station attendant. The attendant drew a pistol and shot the plaintiff in the head and the leg. Finding that the employer could not be held liable, the Court stated:

> Many of the cases cited and discussed in the briefs deal with the question as to whether the business of the employer had been completed before the assault occurred and that, for that and other reasons, the assault was not inflicted with an intent to promote the business of the employer but was motivated by purely personal reasons of the employee, such as gratifying feelings of anger or resentment. We will not further pursue those questions because we have decided that this case should be ruled upon a theory or principle that has not heretofore been expressly applied in this state.
>
> We have concluded that the actions of [the attendant] were so outrageous and criminal—so excessively violent as to be totally without reason or responsibility—and hence must be said, as a matter of law, not to be within the scope of his employment.

*Id*. at 57-58.

The *Wellman* court defined the boundaries of its new theory, stating that "a gardener using a small stick in an assault upon a trespassing child to exclude him from the premises may be found to be acting within the scope of the employment; if, however, the gardener were to shoot the child for the same purpose, it would be difficult to find the act within the scope of employment." *Id*. at 58. In the case at

Appellate Case: 22-1949   Page: 19   Date Filed: 10/27/2022 Entry ID: 5212336

bar, Doe's conduct is more akin to a gardener who shakes a stick at a trespassing child *without* striking him, while shouting derogatory and racist statements. Clearly, the limited rule announced in *Wellman* does not apply to such facts.

AAP's reliance on *Noah,* 759 S.W.2d 905, is equally inapplicable. In that case, the plaintiff patted an employee's girlfriend on the rear. Angered by this, the employee grabbed the plaintiff, bit him, tried to gouge his eyes out, beat his head up against a brick wall and stabbed the plaintiff twice with a knife - - all *outside* of the confines of the employer's business. *Id*. at 912. Rejecting the argument advanced by AAP, the *Noah* Court stated: "The fact that an employee uses physical force not expressly authorized by his employer does not *per se* exonerate the employer." *Id*. at 910. Instead, taking into consideration the maliciousness and criminality of the employee's conduct, the fact that the assault occurred outside of the confines of the business, and the fact that the attack was motivated by the plaintiff patting the rear of the employee's girlfriend rather than in furtherance of the employer's business, the *Noah* court held that "under the facts here" the employee's conduct exceeded the scope of employment. Again, the facts of *Noah* could not be more distinguishable.

AAP also argues that this case is like *Psychiatric Coverage,* 887 S.W.2d 622. It is not. The plaintiff in that case brought a medical malpractice action against a psychologist and his employer, alleging numerous sexual encounters with the psychologist over the course of many months. These sexual encounters occurred not

just at the clinic, but also in the psychologist's car and in his apartment. More importantly, the plaintiff testified that she did not believe that these sexual encounters were part of therapy. *Id*. at 624. Several experts similarly testified that this conduct was not part of therapy and violated ethical codes of conduct. *Id*. Finding that the sexual encounters were not part of any therapy program but rather resulted from "purely private and personal desires," the court held that the psychologist was not acting within the scope of his employment. Indeed, Missouri law specifically states that sexual relations with clients are *never* incidental to the authorized duty of a therapist. *See, e.g*., Missouri Code of State Regulations, 20 CSR 2235-5.030(6)(B) (psychologist shall not undertake or continue a professional relationship with a client if psychologist has or had a sexual relationship with the client). The facts and holding of *Psychiatric Coverage* are so far removed and disparate from those presented herein as to render them completely inapplicable.

Doe was authorized to interact with customers while performing battery testing services. While AAP may not have approved of his methods, Doe's interaction with Tashman was actuated by, and incidental to, his authorized job duties and, therefore, was within the scope of his employment. Having raised a genuine issue of material fact, the District Court erred in granting summary judgment on Counts I, II and III, and the decision must be reversed and remanded for further proceedings.

## C. Public Policy Dictates the Imposition of *Respondeat Superior* Liability.

In his initial brief, Plaintiff quoted from *Maniaci v. Interurban Express Co*., 182 S.W. 981 (Mo. 1916), for its discussion regarding the public policy supporting *respondeat superior* liability. Such public policy is founded upon the principle that an employer should not be permitted to withdraw from the business and turn the same over to agents who have no regard for the public welfare, and thereby escape responsibility for unprovoked, wanton, and malicious assaults, inflicted upon its patrons. *Id*. at 983. In response, AAP ignores or misconstrues the public policy issue, and instead attempts to challenge the holding and facts of *Maniaci*, a Missouri Supreme Court decision, by claiming that *Tockstein*, an unreported case from a lower court, somehow calls *Maniaci's* holding into question. However, *Tockstein* makes no statement contesting the soundness of the public policy discussion in *Maniaci*. AAP's reliance on *Tockstein* is misplaced for these reasons.

AAP further seeks to shield itself from liability by relying on Doe's job description. Essentially, AAP argues that Doe, as a customer service representative, was required to be nice – and since he was not, his actions were outside the scope of his employment. Even AAP must acknowledge that employees do not always behave as their employers would like them to – but that does not mean that they are acting outside the scope of their employment when they do. Indeed, it was clearly

Appellate Case: 22-1949      Page: 22      Date Filed: 10/27/2022 Entry ID: 5212336

foreseeable to AAP that its employees are at times are *not* nice. AAP enacted company policies specifically addressing this foreseeable event. Nonetheless, § 245 of the Restatement (Second) of Agency provides: "A master is subject to liability for the intended tortious harm by a servant to the person or things of another by an act done in connection with the servant's employment, although the act was unauthorized, if the act was *not unexpectable* in view of the duties of the servant." (Emphasis added) (Cited with favor in *Noah,* 759 S.W.2d at 910).

## III. AAP RATIFIED DOE'S ASSAULT WHEN IT FAILED TO IMMEDIATELY REPUDIATE DOE'S ACTIONS AND THEN AFFIRMATIVELY RATIFIED THEM.

Doe himself said it best in his deposition: "*But if they wanted to fire me, they would have fired me reasonably fast, wouldn't they?*" App. 383-384; R.Doc. 34-3, at 17-18.

Of course, Doe was talking about AAP's complete failure to take any action to address his assault on Tashman until AAP received a letter from Plaintiff's legal counsel six (6) weeks later. No less than three (3) levels of AAP's corporate structure (store manager, district manager and corporate office) had full knowledge of Doe's wrongful conduct on the day it occurred. Not only did they all fail to take any disciplinary action against Doe, they concealed the incident by not preparing a written report as required by AAP company policy, failed to escalate the incident to Hogan and others, and affirmatively reassured Doe that he would <u>not</u> be fired. App.

Appellate Case: 22-1949     Page: 23     Date Filed: 10/27/2022 Entry ID: 5212336

383-384; R. Doc. 34-3, at 17-18. Had Plaintiff's counsel not intervened and threatened litigation, Doe would have completely avoided disciplinary action for his unprovoked assault and attempted attack on Tashman.

In its Brief, AAP attempts to argue that it acted "immediately" - - stretching the definition of that word beyond any meaning. In so doing, AAP ignores the facts that occurred during the intervening six (6) weeks between Doe's assault on Tashman and the belated and half-hearted termination of Doe's employment by Maranan, who had to be ordered *multiple times* to terminate Doe. App. 443-444, 448; R. doc. 34-3, at 40, 41, 45. During that time, Doe and his co-workers were left with the belief that AAP had no intention of disciplining Doe and had, in fact, affirmatively ratified and condoned his racist attack on a customer of Middle Eastern descent by assuring Doe that he would not be fired.

AAP ignores these inconvenient and ugly facts and skips directly to its actions occurring only *after* it was threatened with litigation. Even then, AAP took action only reluctantly. Maranan testified that on November 1, 2019, both Hogan and AAP's Vice President of Operations told him to terminate Doe *multiple times*. App. 436; R. Doc. 34-4, at 33; App. 443-444, 448; R. doc. 34-3, at 40, 41, 45. Despite those repeated directives, Maranan did not terminate Doe until November 12, 2019 - - twelve (12) days after being told to do so, and nearly two (2) months after the September 19, 2019 attack. App. 448-449, 451, 455; R. Doc. 34-4, at 45-46, 48; R.

Doc. 34-5. Even then, Doe testified that Maranan never told him *why* they had to let him go, telling him instead that he was still *"free to come into the store*." App. 394; R. Doc. 34-3, at 28; App. 450; R. Doc. 34-4, at 47.

AAP admits, as it must, that a principal's failure to repudiate the wrongful actions of an employee constitutes ratification. AAP attempts to avoid liability on this issue by manufacturing facts not in the record and misconstruing the law.

AAP seeks to mislead this Court by suggesting that during the intervening two months it was conducting a "thorough investigation." Appellee's Brief at p. 30. *No such investigation was being conducted during that time*. To the contrary, Hogan testified that, in violation of AAP company policy, no one prepared a written incident report documenting the attack, and Maranan failed to escalate the incident to him "immediately" (which Hogan defined as either the day of the incident or the following day). App. 470-471; R. Doc. 34-6, at 13-14; App. 479-560; R. Doc. 34-6, at 22-103; App. 524, 526-527; R. Doc. 34-6, at 67, 69-70, App. 478, R. Doc. 34-6, at 21; App. 429, 434, 435, 527, 631; R. Doc. 34-4, at 26, 31-32; R. Doc. 34-6, at 70; R. Doc. 34-9, at 11. It was only after November 1, 2019, when Hogan was informed of the letter from Plaintiff's counsel, that an investigation was belatedly initiated resulting in Hogan reviewing the store video and, *that same day*, immediately directing Maranan to terminate Doe because his actions constituted a threat of violence. App. 538; R. Doc. 34-6, at 81. Had AAP prepared a written report

or escalated the issue immediately following the September 19 incident, Doe and his co-workers would not have been left with the impression that AAP had ratified and condoned Doe's attack.

AAP argues that "Tashman asks this Court to adopt a rule that a two-month time-frame to complete an investigation and terminate an employee amounts to 'ratification' of an employee's improper conduct." Appellee's Brief at p. 31. No such request is made by Plaintiff in this case. Rather, Plaintiff asks this Court to hold AAP liable for its efforts to sweep this incident under the rug without taking any remedial or investigative action whatsoever, thereby condoning and ratifying Doe's actions. In his phone call on the day of the incident to AAP's corporate office, Tashman *repeatedly* requested that AAP review the store video, and Brittany assured him that it would. App. 364; R. Doc. 34-2, at 8. Brittany forwarded this request to Maranan that day, who ignored the request and did not view the video until after he was called onto the carpet by Hogan for failing to document and report the incident. After Plaintiff's attorney contacted AAP's legal department threatening litigation, Hogan reviewed the video and "immediately" that same day concluded that Doe needed to be terminated. By this time, however, the damage had already been done. Maranan had already informed Doe that he would not be fired for his unprovoked racial attack on Tashman, thereby leading Doe and others to conclude that such conduct was not subject to discipline or termination by AAP.

A principal's repudiation must be *immediate* to avoid ratification. *Long's Marine, Inc. v. Boyland,* 899 S.W.2d 945, 948 (Mo. Ct. App. 1995). AAP argues that the cases cited by Plaintiff do not define "immediately" or set a specific deadline. Appellee's Brief at p. 32. However, Black's Law Dictionary defines *immediate* as "occurring without delay; instant." Black's Law Dictionary (11th ed. 2019). Moreover, Hogan defined "immediately" as either that day or the following day. App. 470-471; R. Doc. 34-6, at 13-14; App. 479-560; R. Doc. 34-6, at 22-103. Any reasonable juror could, therefore, distinguish between *immediately* taking action and *belatedly* doing so two (2) months later, only after a threat of litigation.

The case law is clear that the principal must take action immediately upon learning of the incident. Certainly, Tashman's recorded phone call within minutes of the incident detailing the facts of Doe's actions and making repeated requests that AAP view the store video in its possession was more than sufficient to start the clock running. Once Hogan was finally informed of the incident, it took him less than a day to determine that Doe needed to be terminated - - thereby proving that AAP's two month delay was not reasonable under the circumstances. As Doe himself stated, "*if they wanted to fire me, they would have fired me reasonably fast, wouldn't they?*" App. 383-384; R. Doc. 34-3, at 17-18.

Indeed, AAP didn't just fail to take immediate action after having full knowledge of Doe's conduct and a video in its possession verifying Tashman's

Appellate Case: 22-1949    Page: 27    Date Filed: 10/27/2022 Entry ID: 5212336

allegations. AAP *affirmatively* *condoned* Doe's actions by informing him that, despite having knowledge of the incident, it was *not* going to terminate Doe. App. 383-384; R. Doc. 34-3, at 17-18. The Court could not ask for a more direct example of ratification.

Applying the law to the facts and circumstances of this case, no reasonable jury could conclude that AAP immediately repudiated Doe's actions after having been fully informed of them by Tashman. The investigation did <u>not</u> take two months to complete because there was no investigation until Hogan learned of the letter from Plaintiff's attorney six (6) weeks later. Once Hogan learned of the threatened litigation, it took him less than one day to investigate and terminate Doe. In the meantime, however, AAP had affirmatively ratified Doe's bad behavior by assuring him that no disciplinary action would be taken against him. Accordingly, the District Court's grant of summary judgment as to Counts II and III of the Complaint were not proper and this Court must reverse and remand those counts for further proceedings.

## CONCLUSION

The judgment of the District Court as to Counts I, II and III should be reversed, and this matter remanded for further proceedings.

Dated this 27th day of October, 2022.

Appellate Case: 22-1949    Page: 28    Date Filed: 10/27/2022 Entry ID: 5212336

Respectfully submitted,

**MATHIS, MARIFIAN & RICHTER, LTD.**

_/s/ Mark S. Schuver_

Mark S. Schuver, #34713
Natalie T. Lorenz, #65566
Montana L. Sinn, #74225
Mathis, Marifian & Richter, Ltd.
23 Public Square, Suite 300
P.O. Box 307
Belleville, IL 62220
(618) 234-9800 Phone
(618) 234-9786 Fax
mschuver@mmrltd.com
nlorenz@mmrltd.com
msinn@mmrltd.com

_Attorneys for Plaintiff/Appellant Nicolas Tashman_

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) this document contains 5,790 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14-point Times New Roman font.

Pursuant to Eighth Circuit Local Rule 28A(h)(2), this brief and the addendum accompanying it have been scanned for viruses and are virus-free.

/s/ *Mark S. Schuver*

Mark S. Schuver
*Attorney for Plaintiff-Appellant Nicolas Tashman*
Dated: October 27, 2022

Appellate Case: 22-1949    Page: 30    Date Filed: 10/27/2022 Entry ID: 5212336

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ *Mark S. Schuver*

Mark S. Schuver
*Attorney for Plaintiff-Appellant Nicolas*
*Tashman*
Dated: October 27, 2022

Appellate Case: 22-1949    Page: 31    Date Filed: 10/27/2022 Entry ID: 5212336